1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        NORTHERN DISTRICT OF CALIFORNIA
10        SAN JOSE DIVISION

11  SAUNDRA JOHNSON, individually, and on      )   Case No.: 11-CV-05619-LHK
    behalf of all others similarly situated    )
12                                             )   ORDER GRANTING IN PART AND
                        Plaintiffs,            )   DENYING IN PART MOTION TO
13                                             )   DISMISS, OR ALTERNATIVELY FOR
              v.                               )   SUMMARY JUDGMENT, WITH
14                                             )   LEAVE TO AMEND
    SKY CHEFS, INC., a Delaware Business entity, )
15  and DOES ONE through and including DOE     )
    ONE HUNDRED,                               )
16                                             )
                        Defendants.            )
17  _____)

18        Plaintiff Saundra Johnson ("Plaintiff") brings this putative wage and hour class action

19  against her former employer, Defendant Sky Chefs, Inc. ("Defendant"), and Does 1 through 100.

20  Defendant moves to dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety pursuant

21  to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim or, in the alternative, for

22  summary judgment pursuant to Rule 56.  *See* ECF No. 8.  The motion is fully briefed.  *See* ECF

23  No. 13 ("Opp'n"); ECF No. 21 ("Reply").  The Court held a hearing on Defendant's motion on

24  July 26, 2012.  Having considered the parties' submissions and argument and the relevant law, and

25  for the reasons discussed herein, the Court GRANTS IN PART and DENIES IN PART

26  Defendant's motion to dismiss.

27  **I.      BACKGROUND**

28          **A.  Plaintiff's Claims and Allegations**

1       The following allegations are taken from Plaintiff's First Amended Complaint and are

2 accepted as true for purposes of ruling on Defendant's motion to dismiss.  The Court also takes

3 judicial notice of the Collective Bargaining Agreement ("CBA") between Defendant and Plaintiff's

4 union, Unite Here International Union.  *See* ECF No. 8-3, Request for Judicial Notice ("RJN"), Ex.

5 A.[1]

6       Defendant is a Delaware corporation that maintained a place of business in Santa Clara

7 County, California, during all relevant periods.  ECF No. 1-1, First Am. Compl. ("FAC"), ¶¶ 2-3.

8 Plaintiff was employed by Defendant as a kitchen worker at Defendant's San Jose International

9 Airport location from June 15, 2010, to February 3, 2011.  *Id.* ¶ 4.  On February 3, 2011, Plaintiff

10 was told to refrain from returning to work until further notice, and she was formally suspended on

11 February 7, 2011, although she believes the decision to officially terminate her was already final as

12 of February 3, 2011.  *Id.* ¶¶ 5-8.  Plaintiff filed a grievance with her union on February 8, 2011.  *Id.*

13 ¶ 5.  On March 9, 2011, Plaintiff returned to work for a meeting called by Defendant.  *Id.* ¶ 6.

14 When Plaintiff arrived, she was informed that Defendant was terminating her employment.  *Id.*

15 Plaintiff was also given a paycheck, dated February 14, 2011, but Plaintiff received no reporting

16 time pay for coming to work on March 9, 2011.  *Id.*  Plaintiff's rate of pay when she was

17 terminated was $8.60 per hour, *id.* ¶ 4, and her usual or scheduled day's work averaged more than

18

---

19 [1] Defendant requests that the Court take judicial notice of several documents, including, *inter alia*:
20 (1) the collective bargaining agreement governing Plaintiff's employment; (2) a copy of the
Complaint for Injunctive and Declaratory Relief filed in the United States District Court for the
21 Northern District, entitled *Sky Chefs, Inc. v. City of San Jose, California*, Case No. C09 03735; and
(3) a copy of the receipt for the pay check deposited into Plaintiff's checking account on February
22 10, 2011.  *See* RJN & Exs. A, J, E.  Courts routinely take judicial notice of the governing collective
bargaining agreement where necessary to resolve issues of preemption.  *See, e.g., Tan v. Univ. of*
23 *CA San Francisco*, 2007 WL 963222, at *2 n.1 (N.D. Cal. Mar. 29, 2007).  Courts may also take
judicial notice of court records.  *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).
24 Finally, "a court may consider evidence on which the complaint necessarily relies if: (1) the
complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no
25 party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Daniels-Hall v. Nat'l*
*Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted).
26 The Court finds that the CBA, the complaint in *Sky Chefs v. City of San Jose*, and the February 10,
27 2011 direct deposit receipt are all proper subjects of judicial notice, and thus overrules Plaintiff's
objections thereto.  Accordingly, the Court takes judicial notice of these exhibits pursuant to
28 Federal Rule of Evidence 201(b).

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

four hours, *id.* ¶ 11.  This final paycheck provided to Plaintiff "failed to identify the name and address of the legal entity that is the employer," and "certain wage statements fail[ed] to show gross or net wages earned."  *Id.* ¶ 14.  Plaintiff alleges Defendant's failure to provide this information accurately caused her difficulty and expense in filing this lawsuit and in attempting to reconstruct time and pay records.  *Id.*

Plaintiff has never received another paycheck, despite the fact that she contends she is entitled to at least two full days of pay for accrued but unpaid vacation time.  *Id.* ¶ 8.  In addition, Plaintiff received a letter from Defendant in November 2011 informing her that she and other employees were "entitled to a lump sum payment [of] . . . additional wages that had accrued during the period between January 1, 2009 and August 25, 2011.  *Id.* ¶ 4.  Although Plaintiff alleges in the FAC that she has never received a paycheck for the wages to which the November 2011 letter referred, *id.* ¶ 8, in Plaintiff's declaration attached to her opposition to Defendant's motion to dismiss, Plaintiff clarifies that she has "since received a check for those wages," Decl. of Saundra Johnson ("Johnson Decl."), ¶ 4 & Ex. 3.

**B.  Causes of Action**

Based on the foregoing allegations, Plaintiff seeks to recover on various causes of action arising under California and San Jose municipal law: (1) unpaid wages in violation of California Labor Code §§ 204, 227.3, and 1198, and Industrial Wage Order 5; (2) continuing wages (common referred to as "waiting time penalties") under California Labor Code § 203; (3) inaccurate wage statements in violation of California Labor Code § 226; (4) restitution, disgorgement, and injunctive relief for unlawful business practices in violation of California Business & Professions Code § 17200 *et seq.*; and (5) failure to pay minimum wages, in violation of Chapter 25.11 of Title 25 of the City of San Jose Municipal Code.  With respect to Plaintiff's unpaid wages claim, Plaintiff specifically alleges that she is entitled to (a) reporting time pay for attending the March 9, 2011 meeting with Defendant; (b) two full days of unpaid, accrued vacation time; and (3) wages referenced in the November 2011 letter, which equal the difference between Plaintiff's actual wages and the wages to which she believes she is entitled under San Jose's Living Wage

1    Ordinance.  Plaintiff further asserts she was entitled to these payments on February 3, 2011, and

2    that Defendant has been willfully withholding these payments.

3         Plaintiff seeks to represent three putative classes.  The first putative class is comprised of

4    "all employees tendered a final paycheck in California by or on behalf of Defendant in the State of

5    California during the period of four years preceding the filing of this Complaint to the date of the

6    filing of the motion for class certification ("Final Wage Class")."  FAC ¶ 16.  The second putative

7    class is comprised of "all non-exempt employees tendered a paycheck in California by or on behalf

8    of Defendant in the State of California during the period from one year prior to the filing of this

9    Complaint to the date of the filing of the motion for class certification ("226 Class")."  *Id.*  The

10   third putative class is comprised of "all employees of Defendant who worked at the Norman Y.

11   Mineta San Jose International Airport during the period from January 1, 2009 to the date of the

12   filing of the motion for class certification who were not paid in compliance with the City of San

13   Jose's Living Wage Policy as codified in City of San Jose, California, Municipal Code Title 25, §

14   25.11.100, *et seq.* ("Living Wage Class")."  *Id.*

15            **C.  Procedural History**

16         On October 17, 2011, Plaintiff filed a complaint against Defendant in the Superior Court in

17   the County of Santa Clara.  Plaintiff filed a First Amended Complaint ("FAC"), the operative

18   pleading, in state court on November 15, 2011.  Defendant removed the action to federal court on

19   November 21, 2011, asserting 28 U.S.C. §§ 1332(d) as the basis for removal.  ECF No. 1.  The

20   case was reassigned to the undersigned judge on November 23, 2011.  ECF No. 7.  On November

21   28, 2011, Defendant filed the instant motion to dismiss for failure to state a claim, or in the

22   alternative, a motion for summary judgment.  ECF No. 8 ("Mot.").  In support of its motion,

23   Defendant filed: (1) a Declaration of Franklin Bruce Murray; (2) a Declaration of Mary Donnelly;

24   and (3) a Request for Judicial Notice.[2]  Plaintiff filed an opposition, accompanied by: (1) a

25   Declaration of Alan Harris; and (2) a Declaration of Saundra Johnson.  ECF No. 13.  Defendant

26

27   _____

     [2] As already discussed, the Court takes judicial notice of some of Defendant's submitted
28   documents.  The Court does not rely on any of Defendant's other exhibits or declarations, and thus
     Plaintiff's remaining evidentiary objections are denied as moot.

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

filed a reply.[3]  ECF No. 21.  On April 27, 2012, Defendant filed a request to file supplemental

briefing to address a new provision of the parties' operative CBA, which was negotiated and

amended on April 2, 2012, that purportedly waives any Living Wage Ordinance ("LWO") that

would otherwise apply to locations in which Sky Chef conducts its operations.  ECF No. 30.  The

Court granted Defendant's motion on April 27, 2012, and permitted both parties to submit

supplemental briefing on the issue identified by Defendant.  ECF No. 31.  Pursuant to the Court's

Order, on May 15, 2012, Defendant filed a supplemental brief, *see* ECF No. 33 ("Supp. Br."), and

a Request for Judicial Notice of the new, amended CBA, dated April 2, 2012, *see* ECF No. 34 ("2d

RJN"), which the Court grants.  On May 31, 2012, Plaintiff filed a supplemental brief in

opposition.[4]  *See* ECF No. 35 ("Supp. Opp'n").

## II.    LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief

can be granted "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th

Cir. 2001).  Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable

legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  While "detailed factual

allegations" are not required, a complaint must include sufficient facts to "state a claim to relief

that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

---

[3] Defendant separately filed as an attachment to its reply brief: (1) evidentiary objections to the
declarations submitted in support of Plaintiff's opposition; and (2) a reply to Plaintiff's evidentiary
objections.  Civil Local Rule 7-3 requires all evidentiary and procedural objections to be contained
within the opposition or reply brief.  Accordingly, Defendant's separate evidentiary objections fail
to comply with the Civil Local Rules and are STRICKEN.

[4] Plaintiff's supplemental brief was accompanied by a Supplemental Declaration of Alan Harris,
ECF No. 36, which Defendant subsequently moved to strike, ECF No. 37.  Because the
Supplemental Declaration of Alan Harris was authorized by neither the Civil Local Rules nor the
Court's April 27, 2012 Order, Defendant's motion to strike the Supplemental Declaration is
GRANTED.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal*, 129 S. Ct. at 1949. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *accord Iqbal*, 129 S. Ct. at 1950. Furthermore, the Court "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, and the Court need not accept as true allegations contradicted by judicially noticeable facts. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

Where either party submits materials outside the pleadings in support of, or opposition to, a Rule 12(b)(6) motion to dismiss, the motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if the Court relies on those materials. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); *cf.* Fed. R. Civ. P. 12(d). The Court, however, has discretion to consider or reject such materials, and a motion to dismiss will not be converted into one for summary judgment if the Court does not rely on the extrinsic materials. *See Swedberg v. Marotzke*, 339 F.3d 1139, 1143-36 (9th Cir. 2003).

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires, bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

*United States District Court*
For the Northern District of California

1    Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly

2    prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in

3    bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

4    **III.     DISCUSSION**

5            **A.  Railway Labor Act ("RLA") Preemption**

6            Congress enacted the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, which was

7    extended in 1936 to cover the airline industry, "to promote stability in labor-management relations

8    by providing a comprehensive framework for resolving labor disputes."  *Hawaiian Airlines, Inc. v.*

9    *Norris*, 512 U.S. 246, 252 (1994) (citing *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557,

10   562 (1987)).  To realize this goal, the RLA established a mandatory arbitral mechanism for two

11   classes of disputes: (1) "major" disputes "concerning "'rates of pay, rules or working conditions,'"

12   *id.* (quoting 45 U.S.C. § 151a); and (2) "minor" disputes that "'gro[w] out of grievances or out of

13   the interpretation or application of agreements covering rates of pay, rules, or working

14   conditions,'" *id.* at 252-53 (quoting 45 U.S.C. § 151a).  Defendant contends that Plaintiff's claims

15   for unpaid reporting time pay, unpaid vacation time pay, and continuing wages are minor disputes

16   preempted by the RLA and thus subject to mandatory arbitration.

17           As a threshold matter, the parties dispute whether Sky Chefs is a covered employer under

18   the RLA.  The RLA governs only labor relations involving "railroad[s] subject to the jurisdiction of

19   the Surface Transportation Board, . . . any company which is directly or indirectly owned or

20   controlled by or under common control with any carrier by railroad," 45 U.S.C. § 151, and

21   "common carrier[s] by air," 45 U.S.C. § 181.  As the Fifth Circuit has observed, the RLA does not

22   define the term "common carrier by air."  *See Thibodeaux v. Exec. Jet Int'l, Inc.*, 328 F.3d 742, 749

23   (5th Cir. 2003).  The Fifth Circuit determined that "'the crucial determination in assessing the

24   status of a carrier is whether the carrier has held itself out to the public or to a definable segment of

25   the public as being willing to transport for hire, indiscriminately,'" and that this "test 'is an

26   objective one, relying upon what the carrier actually does rather than upon the label which the

27   carrier attaches to its activity or the purpose which motivates it.'"  *Id.* at 750 (quoting *Woolsey v.*

28   *Nat'l Transp. Safety Bd.*, 993 F.2d 516, 523 (5th Cir. 1993)) (footnotes omitted).  In *Thibodeaux*,

7

**United States District Court**
For the Northern District of California

1  the Fifth Circuit observed that this is equivalent to the definition of common carrier by air applied

2  by the National Mediation Board ("NMB").  *See id.* (citing *In re S. Air Transport*, 8 N.M.B. 31

3  (1980)).

4         As the party asserting preemption, Defendant bears the burden of showing that the RLA

5  applies.  *See Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995) (burden of proof

6  rests with party asserting preemption defense); *United States v. Skinna*, 931 F.2d 530, 533 (9th Cir.

7  1990) (same).  In support of its contention that Sky Chefs is a common carrier by air under the

8  RLA, Defendant cites to a 1988 advisory opinion issued by the National Mediation Board

9  ("NMB") finding that Sky Chefs was subject to a substantial degree of control by the airlines for

10  which it worked, and that its employees were therefore subject to the jurisdiction of the RLA.  *Sky*

11  *Chefs, Inc.*, 15 NMB 397, 405 (1988).  Defendant also cites a Seventh Circuit opinion reaching the

12  same conclusion in reliance on the NMB's finding.  *See Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316,

13  317 (7th Cir. 1994).  Defendant submits no other evidence demonstrating that Sky Chefs is

14  "directly or indirectly owned or controlled by or under common control with any carrier."  45

15  U.S.C. § 151.

16         Defendant's preemption defense thus essentially relies exclusively on an advisory opinion

17  of the NMB that is over 20 years old.  The Court agrees with Plaintiff that Defendant's submission

18  is insufficient to carry Defendant's burden of proving that the RLA applies here.  While the

19  Seventh Circuit and the underlying NMB's findings would certainly be persuasive if they were

20  temporally proximate, Defendant provides no basis for inferring that the NMB's findings in 1988

21  reflect Sky Chefs' current operations.  Accordingly, Defendant's motion to dismiss Plaintiff's

22  claims for unpaid and continuing wages on the basis of RLA preemption is DENIED without

23  prejudice.  The parties may conduct limited discovery on the question of RLA preemption, and

24  Defendant may re-file a motion to dismiss or a motion for summary judgment pursuant to Rule 56

25  on the question of RLA preemption.  *See Smylie v. Cal. Physician's Serv.*, No. 10-CV-02966 RS,

26  2010 WL 3565507, at *2 (N.D. Cal. Sept. 9, 2010) (denying motion to dismiss without prejudice

27  and granting limited discovery on the question of ERISA preemption).

28         **B.  Unpaid Wages**

8

Defendant argues that, even if not preempted under the RLA, Plaintiff's claims for unpaid wages fail for other reasons.  The Court briefly addresses these arguments independently of the RLA preemption question.

### 1.  Reporting Time Pay

Industrial Welfare Commission ("IWC") Wage Order 5 provides that "[e]ach workday an employee is required to report to work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage."  8 C.C.R. § 11050(5)(A).  Wage Order 5 is incorporated by reference into California Labor Code § 1198, which makes unlawful "[t]he employment of any employee . . . under conditions of labor prohibited by the order" of the IWC.  Plaintiff alleges that she is owed reporting time pay for meeting with her manager on March 9, 2011.  FAC ¶¶ 11, 37.

Defendant moves to dismiss this claim or, in the alternative, for summary judgment, on the ground that Plaintiff has already been compensated for her attendance at the March 9, 2011 meeting with her manager as required by Wage Order 5, and therefore Plaintiff cannot state a claim as a matter of law.  Mot. at 12.  Defendant points to Exhibit 1 to the FAC, a paycheck that was provided Plaintiff on March 9, 2011, which indicates that Plaintiff received two hours' worth of wages.  Defendant argues that this payment of two hours' worth of wages fully complies with Wage Order 5.  Plaintiff concedes that she received two hours of pay for attending the meeting, but argues that she is entitled to additional reporting time pay because her usual or scheduled day's work routinely exceeded four hours, and thus the two hours of pay was insufficient.  Opp'n at 9.

On this point, a recent decision by the California Court of Appeal involving similar factual allegations is particularly instructive.  *See Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136 (2011).[5]  In *Price*, a Starbucks employee was removed from his regular schedule on November 11 and was subsequently called into work by his manager for a meeting on November 16, whereupon he was terminated and paid two hours of pay for attending the termination meeting.  *See id.* at

---

[5] The plaintiff in *Price* was represented by the same counsel representing Plaintiff here.

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

**United States District Court**
For the Northern District of California

1139.  The plaintiff there sought damages and penalties, alleging that his employer should have paid him 3.3 hours at his regular rate of pay, the average of his scheduled shifts, for reporting for work on the day he was fired.  The Court of Appeal rejected the plaintiff's claim, reasoning that "he did not report to work with the expectation that he would work a scheduled shift, but rather was scheduled to attend a meeting for an unspecified number of hours. . . . Price was not scheduled to work on November 16, and his expectation was he had been called to work for a meeting on his day off."  *Id.* at 1147.  Accordingly, the plaintiff was fully compensated for reporting to the meeting consistent with Wage Order 5.

In rejecting the *Price* plaintiff's claim, the California Court of Appeal first considered the plain meaning of the regulatory language and concluded that "[t]he use of the disjunctive 'or' in this regulation, is used in the ordinary sense, suggesting alternatives."  *Id.* at 1146.  Thus, "[i]f an employee is required to work, reports to work, and is not put to work or does not work half of the employees' usual or scheduled day's work, the employee is paid a half-shift reporting wage not to exceed four hours."  *Id.*  Alternatively, "[i]f an employee is not scheduled to work or does not expect to work his usual shift, but must report to work for a meeting, the employee falls into the regulatory category of those employees called to work on their day off for a scheduled meeting."  *Id.*  The Court of Appeal further determined that this plain-language interpretation of the regulation was consistent with the intent of the Industrial Welfare Commission in promulgating the reporting time pay regulation.  As explained by the DLSE, the primary purpose of the reporting time pay regulation "is to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer."  *Id.* (quoting DLSE Operations and Procedures Manual (1989) § 10.88; *Cal. Mfgs. Ass'n v. Indus. Welfare Com.*, 109 Cal. App. 3d 95, 112 (1980)).  In other words, "[t]he reporting time pay regulation protects an employee from losing all pay because of scheduling errors."  *Id.* at 1147.

Plaintiff here, like the plaintiff in *Price*, has made no allegations that she was scheduled to work or had an expectation of working on March 9, 2011.  The FAC alleges simply that Plaintiff "returned to work for a meeting called by her employer" after a month-long suspension.  FAC ¶ 6.

10

United States District Court
For the Northern District of California

1    Without an allegation that Plaintiff was either scheduled to or had the expectation of working a

2    normal shift, Plaintiff has failed to plead the element of expectation that is needed to claim more

3    than the minimum of two hours of reporting time pay under Wage Order 5.  Accordingly,

4    Plaintiff's claim to additional reporting time pay on a theory that her average work day exceeded

5    four hours is insufficient as a matter of law, and Defendant's motion to dismiss the claim on such

6    grounds is GRANTED.  Because it is not clear that amendment would be futile, however, the

7    dismissal is without prejudice.

8                              **2.  Vacation Time Pay**

9           Plaintiff asserts that she had accrued two vacation days for which she was never

10    compensated, in violation of California Labor Code § 227.3.  Section 227.3 provides that:

11              Unless otherwise provided by a collective-bargaining agreement, whenever a
              contract of employment or employer policy provides for paid vacations, and an
12              employee is terminated without having taken off his vested vacation time, all vested
              vacation shall be paid to him as wages at his final rate in accordance with such
13              contract of employment or employer policy respecting eligibility or time served;
              provided, however, that an employment contract or employer policy shall not
14              provide for forfeiture of vested vacation time upon termination.

15    Vested vacation time "is not a gratuity or a gift, but is, in effect, additional wages for services

16    performed." *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982) (citation omitted).  As

17    the California Supreme Court has explained, pay for vested vacation time, similar to pension or

18    retirement benefits, "is simply a form of deferred compensation." *Id.* at 780.  Furthermore, it is

19    firmly established under California law that if an employer chooses to include a paid vacation as a

20    portion of the employee's compensation, the employer "is not free to reclaim it after it has been

21    earned." *Henry v. Amrol, Inc.*, 222 Cal. App. 3d Supp. 1, 5 (1990); *accord Owen v. Macy's, Inc.*,

22    175 Cal. App. 4th 462, 468 (2009).  Thus, while California law does not require an employer to

23    provide its employees with any paid vacation at all, whenever an employer chooses to provide

24    vacation benefits, § 227.3 prohibits the complete forfeiture of an employee's vested vacation time.

25    *Owen*, 175 Cal. App. 4th at 468; *see Boothby v. Atlas Mech., Inc.*, 6 Cal. App. 4th 1595, 1601-02

26    (1992) ("Because vacation in an amount established by the employment agreement is deferred

27

28

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

1   compensation for services rendered, the right to paid vacation vests as the employee labors.  It is

2   nonforfeitable.").

3        Here, Plaintiff clearly states that she was terminated without having taken off her two days

4   of vested vacation time, and that she was not provided any compensation for this vested vacation

5   time.  Nonetheless, Defendant contends that Plaintiff is foreclosed from bringing a claim under §

6   227.3 altogether because Plaintiff's employment was governed by a collective bargaining

7   agreement, and § 227.3 applies only "[u]nless otherwise provided by a collective-bargaining

8   agreement."  Mot. at 8 (citing Cal. Lab. Code § 227.3).  Under the terms of the operative CBA

9   here, the only employees entitled to a payout of accrued, unused vacation benefits are: (1)

10  employees who are laid off; and (2) employees who are otherwise separated from employment and

11  who have 10 years or more company seniority.  *See* RJN Ex. A at 25-26.  Plaintiff alleges in her

12  FAC that she was only employed by Defendant between June 15, 2010 and February 3, 2011, and

13  that she was terminated.  *See* FAC ¶¶ 4, 7.  Thus, on the face of Plaintiff's own allegations, she is

14  not entitled to vacation wages under the terms of the CBA.

15       Plaintiff, however, does not allege breach of the CBA.  Rather, Plaintiff asserts that

16  Defendant's policy limiting vacation time compensation to certain employees contravenes § 227.3,

17  which prohibits any employment contract or employer policy that provides for "forfeiture of vested

18  vacation time upon termination."  Cal. Lab. Code § 227.3.  The Court agrees with Plaintiff that

19  Defendant misreads § 227.3.  Under § 227.3, the default rule is that "whenever a contract of

20  employment or employer policy provides for paid vacations, and an employee is terminated

21  without having taken off his vested vacation time, all vested vacation shall be paid to him as wages

22  at his final rate in accordance with such contract of employment or employer policy respecting

23  eligibility or time served."  *Id.*  This default rule does not apply where a collective bargaining

24  agreement provides otherwise.  *Id.*; *see Livadas v. Bradshaw*, 512 U.S. 107, 128 (1994) (noting that

25  § 227.3 "allow[s] parties to collective-bargaining agreement to arrive at different rule for vacation

26  pay").  Finally, however, the last clause of § 227.3 imposes a floor on the terms of a collective

27  bargaining agreement, expressly stating that "an employment contract or employer policy shall not

28  provide for forfeiture of vested vacation time upon termination."  Cal. Lab. Code § 227.3.  Thus,

12

United States District Court
For the Northern District of California

the plain language of § 227.3 provides that, while parties to a collective bargaining agreement may agree to a different vacation time payout scheme than the one explicitly provided for under § 227.3, the parties may not negotiate the complete forfeiture of any employee's vested vacation time. *See Boothby*, 6 Cal. App. 4th at 1601 ("On termination, an employee must be paid in wages for all vested but unused vacation unless a collective bargaining agreement *provides for some other form of compensation*.") (emphasis added). Defendant fails to cite any legislative history or case law indicating that § 227.3 should be interpreted contrary to its plain meaning.

Accordingly, Plaintiff is not barred by the CBA from stating a claim under § 227.3, and Plaintiff has adequately state such a claim here. Defendant's motion to dismiss is therefore DENIED.

### C. Continuing Wages

Section 201 requires payment of employee wages within 72 hours of an employee's termination. *See* Cal. Lab. Code § 201. California Labor Code § 203 provides that, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced." Plaintiff alleges that she is owed continuing wages for unpaid vacation pay and unpaid reporting time pay.[6] FAC ¶¶ 31-32.[7]

As discussed in the preceding two sections, Plaintiff has failed to state a claim for additional reporting time pay under Wage Order 5 and § 1198, and thus her claim for continuing wages based on this alleged predicate violation necessarily also fails. However, Plaintiff has

---

[6] Plaintiff also alleges that she is entitled to additional unpaid wages required under the San Jose Living Wage Ordinance. The Court addresses Plaintiff's claims under the Living Wage Ordinance in Section II.F, *infra*.

[7] In her opposition, Plaintiff argues that an additional basis for her continuing wages claim is the fact that she was terminated on February 3, 2011, but was not paid until February 10, 2011, more than 72 hours after her discharge. Opp'n at 10. This claim, however, is not clearly articulated within the four corners of the FAC, and therefore the Court will not consider it. Plaintiff may include these allegations in any amended complaint, although the Court directs Plaintiff to *Price v. Starbucks*, in which the California Court of Appeal struck similar allegations from a complaint upon determining that they were insufficient as pled to state a claim for continuing wages under § 201. *See* 192 Cal. App. 4th at 1144-45.

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

successfully stated a claim for unpaid vacation pay under § 227.3, and thus for unpaid wages under § 204. Because Plaintiff was not paid compensation for her vested vacation pay upon termination, she has also stated a claim for continuing wages under § 203 based on Defendant's alleged willful failure to pay her vacation time compensation. *See* FAC ¶ 10.

Defendant nonetheless moves to dismiss, arguing that Plaintiff cannot recover § 203 penalties because there is at least a "good faith dispute" as to whether any of the alleged unpaid wages were in fact owed, which precludes a finding of willfulness. *See* Mot. at 15-16. Defendant cites the implementing regulations for § 203, which state, "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." 8 C.C.R. § 13520.

The Court does not find Defendant's good faith dispute defense amenable to resolution at this early stage of the proceedings. Whether Defendant ultimately prevails on its affirmative defense of a "good faith dispute" has no bearing on whether Plaintiff has adequately stated a legally cognizable claim, which Plaintiff has. Moreover, although Defendant seeks summary judgment in the alternative to dismissal, Defendant's "good faith dispute" defense may turn on factual determinations. Plaintiff requests a Rule 56(d) continuance, and such requests are "fairly freely" granted when a party moves for summary judgment before the opposing party has had a meaningful opportunity for discovery. *See Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). Here, Defendant moved for summary judgment before discovery had even begun, and thus the Court determines that dismissing Plaintiff's claim based on Defendant's asserted good faith dispute defense would be particularly inappropriate. Accordingly, Defendant's motion to dismiss Plaintiff's claim for continuing wages is GRANTED to the extent such claim is based on reporting time pay, but DENIED to the extent such claim is based on vacation time pay. Because the dismissal of Plaintiff's reporting time pay claim is without prejudice, the dismissal of Plaintiff's derivative § 203 claim is also without prejudice.

### D. Inaccurate Wage Statements

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

1    Plaintiff next asserts violation of California Labor Code § 226, which provides that "[e]very

2    employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her

3    employees . . . an accurate itemized statement in writing showing," *inter alia*, "(1) gross wages

4    earned, . . . (5) net wages earned, . . . [and] "(8) the name and address of the legal entity that is the

5    employer." Cal. Lab. Code § 226(a)(1), (5), and (8). Plaintiff asserts that her last wage statement

6    (attached as Exhibit 1 to the FAC) "failed to identify the name and address of the legal entity that is

7    the employer," and that "certain wage statements fail[ed] to show gross or net wages earned."

8    FAC ¶¶ 14, 40.

9    Before considering the substance of Plaintiff's claim, the Court follows the California Court

10   of Appeal's lead in *Price v. Starbucks* by first determining whether Plaintiff has adequately pled an

11   injury arising from Defendant's alleged violation. *See* 192 Cal. App. 4th at 1142 & n.4 (declining

12   to reach the substance of Price's § 226 claims upon determining that Price failed to plead an

13   injury). "To recover damages under [§ 226(e)], an employee must suffer injury as a result of a

14   knowing and intentional failure by an employer to comply with the statute."[8] *Id.* at 1142. The

15   mere omission of information required under § 226(a) is not, on its own, sufficient to establish the

16   requisite injury under § 226(e). *Id.*; *see Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286,

17   1306 (2010); *see also Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal.

18   2008). Rather, "[b]y employing the term 'suffering injury,' the statute requires that an employee

19   may not recover for violations of [§ 226(a)] unless he or she demonstrates *an injury* arising from

20   the missing information." *Price*, 192 Cal. App. 4th at 1142-43. "[T]he 'deprivation of that

21   information,' standing alone[,] is not a cognizable injury." *Id.* at 1143 (quoting *Jaimez*, 181 Cal.

22   App. 4th at 1306-07).

23   Plaintiff here, like the plaintiff in *Price*, has identified only vague and speculative injuries

24   arising from Defendant's alleged noncompliance with § 226. Plaintiff alleges that Defendant's use

---

[8] Section 226(e) states: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

1   of the name "LSG Sky Chefs Inc." rather than its legal name "Sky Chefs, Inc." "has caused

2   confusion" among the employees, many of whom "suffer from dyslexia and/or dyscalculia and/or

3   are illiterate."  FAC ¶ 40; *id.* ¶ 14.  Plaintiff alleges that these injuries, as well as "possible

4   underpayment of wages due," also resulted from Defendant's failure to show gross or net wages

5   earned on certain wage statements.  FAC ¶ 40; *id.* ¶ 14.  Notably, however, Plaintiff does not allege

6   that she herself suffers from any of these disabilities or that she was personally injured by

7   Defendant's addition of the acronym "LSG" before its legal name.  *See Price*, 192 Cal. App. 4th at

8   1143 n.8 (rejecting employee's attempt to establish injury by alleging that employees suffered from

9   disabilities, where plaintiff failed to allege that he himself suffered from the disability "or any

10  connection between the disability and an alleged injury arising from the purportedly missing

11  information from the earnings statements").  The only "injury" Plaintiff alleges that is specific to

12  her is "the difficulty and expense of having to file this lawsuit," FAC ¶ 14, but Plaintiff cannot

13  manufacture her own injury by filing a lawsuit where no underlying injury otherwise exists.

14          Moreover, Plaintiff's allegation that her wage statements did not contain itemized gross and

15  net pay, and thus caused Plaintiff "difficulty and expense . . . in attempting to reconstruct time and

16  pay records," is belied by the exemplary wage statement attached to Plaintiff's FAC as Exhibit 1,

17  which on its face clearly itemizes "Gross Pay" and "Net Pay."  *Compare* FAC ¶ 14 *with* FAC Ex.

18  1.  The wage statement Plaintiff attached to her FAC complies with the § 226(a)(1) and (a)(5), and

19  therefore thwarts Plaintiff's ability to state a claim to relief that is plausible on its face.[9]  *See Iqbal*,

20  ─────────────────────

[9] In her opposition, Plaintiff recasts her complaint, arguing not that the wage statements failed to

21  provide itemized gross pay and net pay altogether, but rather than the wage statements failed to

    provide *accurate* gross or net wages earned.  *See* Opp'n at 6-7.  Plaintiff's newly characterized

22  claim is based on a check in the gross amount of $4,886.14 she received from Defendant on

    November 22, 2011, accompanied by a letter explaining that her wage rates for 2010 and 2011

23  were $14.19 per hour and $13.12 per hour, respectively.  *See id.*; Johnson Decl. Ex. 3.  Plaintiff

    asserts that all of the wage statements she received during the duration of her employment listed

24  the incorrect wage rates of $9.00 and $8.60, respectively, in violation of § 226.  *Id.* at 6.  These

    allegations are not found within the four corners of the FAC but rather are presented for the first

25  time in Plaintiff's opposition, and thus are not properly considered by the Court on a motion to

    dismiss.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.

26  1990).  Even if the Court were able to consider these allegations, however, the Court has serious

    doubts as to whether they support a claim under § 226.  Section 226 requires the employer to

27  itemize "all applicable hourly rates *in effect during the pay period* and the corresponding number

    of hours worked at each hourly rate by the employee."  Cal. Labor Code § 226(a)(9) (emphasis

28

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

129 S. Ct. at 1949; *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("'[A] plaintiff may plead herself out of court.'") (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)). In *Price*, the California Court of Appeal found that Price's allegation of a "mathematical injury" was insufficient where Price merely "speculate[d] on the 'possible underpayment of wages due,' which [was] not evident from the wage statements attached to the complaint." *Price*, 192 Cal. App. 4th at 1143. Like the plaintiff in *Price*, Plaintiff here offers nothing more than a bare, conclusory assertion that she suffered injury from having to reconstruct her time records, but she does not allege "the type of mathematical injury that requires computations to analyze whether the wages paid in fact compensated him for all hours worked." *Id.* (internal quotation marks and citation omitted). Accordingly, the Court concludes that Plaintiff has failed to plead injury required to state a claim for damages under § 226(e), and the Court need not address Defendant's remaining grounds for dismissal at this time. Defendant's motion to dismiss Plaintiff's claim under § 226 is therefore GRANTED. However, it is not clear that amendment would be futile, and therefore the dismissal of this claim is without prejudice.

### E. Unlawful Business Practices

Plaintiff alleges a violation of California's Unfair Competition Law ("UCL"), California Business & Professional Code § 17200 *et seq.*, based on Plaintiff's predicate claims under California Labor Code §§ 203, 204, 226, 227.3, 1198, and Wage Order No. 5. FAC ¶¶ 41-52. Although Defendant does not explicitly address this cause of action, Defendant has moved for dismissal on each of the underlying claims.

As described in the preceding sections, Plaintiff has failed to state a claim for reporting time pay or for inaccurate wage statements. However, Plaintiff has adequately stated a claim for unpaid vacation time pay and continuing wages based thereupon, in violation of §§ 227.3 and 203, respectively. Accordingly, Defendant's motion to dismiss Plaintiff's UCL claim is DENIED.

### F. San Jose Living Wage Ordinance

---

added). Plaintiff does not allege that the gross pay and net pay itemized on her wage statements did not accurately reflect the hourly rates in effect during the relevant pay periods.

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

1    Finally, Plaintiff asserts that Defendant failed to pay Plaintiff the minimum wage rates

2   mandated by the San Jose Living Wage Ordinance ("LWO") throughout the duration of Plaintiff's

3   employment, and that such withholding of wages is also subject to waiting time penalties under §

4   203.  The LWO establishes a minimum hourly wage of $12.83, if health insurance is provided, or

5   $14.08, if no health insurance is provided, for all covered employees working at the Norman Y.

6   Mineta San Jose International Airport ("San Jose Airport").  S.J.M.C. § 25.11.500 (2009).  The

7   LWO provides that "[a]ny employee aggrieved by a violation of the minimum compensation

8   requirements . . . may bring a civil action in a court of competent jurisdiction against the Airport

9   Business violating this Chapter and, upon prevailing shall be entitled to such legal or equitable

10  relief as may be appropriate to remedy the violation including without limitation, the payment of

11  any back wages and benefits unlawfully withheld and interest thereon, reinstatement in

12  employment and/or injunctive relief, and shall be awarded reasonable attorney's fees and costs."

13  S.J.M.C. § 25.11.1900(a).  A plaintiff is entitled to treble damages for willful violation of the

14  LWO, and the LWO does not limit "an employee's right to bring legal action for violation of any

15  other laws concerning wages, hours, or other standards or rights."  S.J.M.C. § 25.11.1900(b).

16  Plaintiff alleges that, at all times of her employment, her hourly wages were less than the rates

17  dictated by the LWO, and accordingly seeks back wages, treble damages, attorney's fees, and

18  costs.

19    Defendant makes several arguments why Plaintiff's LWO and related § 203 claims should

20  be dismissed.  First, Defendant argues that Plaintiff's claim for unpaid wages under the LWO is

21  preempted by the National Labor Relations Act ("NLRA") under the *Machinists* doctrine.  *See*

22  *Machinists v. Wis. Emp't Rels. Comm'n*, 427 U.S. 132, 147 (1976).  *Machinists* preemption

23  "prohibits state regulation of conduct that Congress intended to be left to be controlled by the free-

24  play of economic forces."  *Chamber of Commerce v. Bragdon*, 64 F.3d 497, 499 (9th Cir. 1995)

25  (citing *Machinists*, 427 U.S. at 147).  "[S]tate legislation, which interferes with the economic

26  forces that labor or management can employ in reaching agreements, is pre-empted by the NLRA

27  because of its interference with the bargaining process."  *Bragdon*, 64 F.3d at 501; *see also*

28  *Machinists*, 427 U.S. at 153.  For example, in *Bragdon*, the Ninth Circuit held that a county

**United States District Court**
For the Northern District of California

18

ordinance "mandat[ing] that employers pay 'prevailing wages' to their employees on wholly

private construction projects" was preempted.  *See id.* at 498.  Because such an ordinance was not a

"minimum wage law, applicable to all employees," the Ninth Circuit was concerned that such a

state law would "redirect efforts of employees not to bargain with employers, but instead, to seek

to set minimum wage and benefit packages with political bodies."  *Id.* at 504.  Defendant argues

that the San Jose LWO, which is not a law of general application but rather imposes minimum

hourly wages only for employees at the San Jose Airport, similarly interferes with the bargaining

process and is thus preempted by the NLRA.

Defendant's argument is without merit.  As *Bragdon* itself recognized, the Supreme Court

has "crystallized the difference between the government acting as a proprietor and participant in

the market place as opposed to the government acting as a regulator."  *Id.* at 501 (citing *Bldg. &*

*Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I.*, 507

U.S. 218 (1993) ("*Building Trades*")).  "When a State owns and manages property, for example, it

must interact with private participants in the marketplace.  In so doing, the State is not subject to

pre-emption by the NLRA, because pre-emption doctrines apply only to state *regulation*."

*Building Trades*, 507 U.S. at 227 (emphasis in original).  Here, the "purpose and scope" provision

of the LWO expressly provides that "[t]he City as proprietor of the Airport depends upon the

revenue it receives from business operations located at the Airport and any interruption in service

at the Airport would result in adverse effects on services available to the public and substantial lost

revenue for the Airport. . . . It is essential for the financial viability of the Airport that services be

provided and business operations conducted without interruption."  S.J.M.C. § 25.11.100.  Thus, as

Plaintiff correctly argues, San Jose is acting as a proprietor and participant in the marketplace

rather than as a regulator in implementing the LWO.  Defendant offers no response to Plaintiff's

market participant argument, and therefore the Court concludes that the LWO is not preempted

under the *Machinists* doctrine.

Second, Defendant argues that Plaintiff cannot state a claim under the LWO because she is

not an "aggrieved employee."  *See* S.J.M.C. § 25.11.1900(a); Reply at 14.  Defendant relies on

Plaintiff's concession in her Opposition that she received a check from Defendant on November

United States District Court
For the Northern District of California

19

22, 2011, that reflected the difference between her hourly rate of pay and the rate of pay under the LWO over the course of her employment.  *See* Johnson Decl. ¶ 4 & Exs. 2 & 3.  The Court is not persuaded.  While Plaintiff's acceptance of the November 22, 2011 check may negate her ability to recover back wages, it does not preclude her from asserting claims for treble damages, attorneys' fees and costs, or waiting time penalties under § 203 for the late payment of such wages allegedly owed.  Thus, Plaintiff may still be an "aggrieved employee" even though she has already at least partially recovered for her asserted LWO claim.[10]

Third, Defendant argues in its Supplemental Brief that Plaintiff's claim is barred by a new provision in the amended collective bargaining agreement between Unite Here and Sky Chefs ("Amended CBA"), dated April 2, 2012, which provides: "Effective April 1, 2012, where permitted by law, effective and retroactive to January 1, 2003, Living Wage Ordinances and each of its provisions are expressly waived and are not applicable.  This applies to all present and future units that the Company operates."  Supp. Br. at 3; 2d RJN Ex. A ¶¶ II.A.5 & II.C.3.  Again, the Court is not persuaded.  Plaintiff is no longer an employee of Defendant's, and thus it is not clear why Plaintiff's ability to claim damages based on a Defendant's past alleged violation would be foreclosed by an agreement to which Plaintiff does not appear to be bound.  Furthermore, Plaintiff cites California case law explaining that California Labor Code § 221 "prevents an employer from taking back any wages from an employee after they are earned."  *Harris v. Investor's Bus. Daily, Inc.*, 138 Cal. App. 4th 28, 40 (2006).  Section 221, then, potentially bars the retroactive effect of the Amended CBA's waiver of the LWO, which, under Plaintiff's theory, amounts to a retroactive confiscation of earned wages.  In any event, the Court agrees with Plaintiff that this defense cannot

---

[10] In its reply, Defendant also raises for the first time an additional argument that Plaintiff's claim is barred by a settlement agreement entered into between Sky Chefs and the City of San Jose in *Sky Chefs, Inc. v. City of San Jose*, Case No. C09 3735 RS, wherein the City of San Jose expressly releases Sky Chefs from "all known and unknown claims and causes of action (including but not limited to any claims for fines or penalties) that may exist as of the date of this Agreement, arising out of Sky Chef's status as a leaseholder at SJC as it relates to wages governed by the LWO and the Amended LWO."  *See* Murray Decl. ¶ 3 & Ex. F.  The Court "need not consider arguments raised for the first time in a reply brief," *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), and therefore the Court declines to consider this argument, which is not responsive to any new arguments raised in Plaintiff's Opposition.

Case No.: 11-CV-05619-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

1    be properly resolved at the motion to dismiss phase, as the parties may require some discovery to

2    resolve the question of whether Plaintiff is bound by the Amended CBA.

3         Finally, Defendant moves to dismiss Plaintiff's § 203 claim for continuing wages based on

4    the LWO, again asserting the "good faith dispute" defense. Defendant argues that its litigation

5    with the City of San Jose over the applicability of the LWO demonstrates a good faith dispute and

6    precludes a finding of willfulness. Again, for the reasons discussed above with respect to

7    Plaintiff's other claims for continuing wages, this defense is not amenable to resolution at this early

8    stage of the proceedings, and thus summary judgment would also not be appropriate.

9         In light of this discussion, Defendant's motion to dismiss Plaintiff's LWO claim and

10   continuing wages claim based thereon is DENIED.

11                    **G.  Motion for Summary Judgment In the Alternative**

12        Defendant moves in the alternative for summary judgment on all claims. Because the Court

13   grants Defendant's motion to dismiss Plaintiff's claims for reporting time pay and for inaccurate

14   wage statements, the Court need not reach Defendant's request for summary judgment in the

15   alternative. With respect to Plaintiff's remaining claims that survive this motion to dismiss, the

16   Court determines that summary judgment would be inappropriate at this early stage of the

17   proceedings and that Plaintiff is entitled to at least some discovery before her claims are finally

18   adjudicated. Accordingly, Defendant's motion in the alternative for summary judgment on

19   Plaintiff's vacation time pay, continuing wages, unlawful business practices, and LWO claims is

20   DENIED without prejudice.

21        **IV.      CONCLUSION**

22             For the foregoing reasons, Defendant's motion to dismiss is DENIED with respect to

23   Plaintiff's claims for unpaid wages, waiting time penalties, and violation of the UCL as they relate

24   to Plaintiff's claims for unpaid vacation pay. In all other respects, the motion is GRANTED

25   without prejudice. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall

26   be freely given when justice so requires." *Lopez*, 203 F.3d at 1127 (internal quotation marks and

27   alterations omitted). Because it is not clear that amendment would necessarily be futile, cause

28   undue delay, or prejudice Defendants, the Court grants Plaintiff leave to amend. *See Leadsinger,*

21

*Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  Any amended complaint must be filed and served within twenty-one days of the date of this Order.  With the exception of a civil penalties claim pursuant to the Labor Code Private Attorneys General Action ("PAGA"), Cal. Lab. Code § 2698 *et seq.*,[11] Plaintiff may not add any other new causes of action or parties in her Second Amended Complaint absent leave of the Court or the parties' stipulation.  *See* Fed. R. Civ. P. 15.  Failure to cure the deficiencies identified herein will result in dismissal of those claims with prejudice.

**IT IS SO ORDERED.**


Dated: September 27, 2012                                          _Lucy H. Koh_____
                                                                              LUCY H. KOH
                                                                              United States District Judge

For the Northern District of California

**United States District Court**

---

[11] On February 13, 2012, Plaintiff filed a motion for leave to file a Second Amended Complaint for the sole purpose of alleging a civil penalties claim pursuant to the Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.  See* ECF No. 17.  Defendant filed a Statement of Non-opposition.  *See* ECF No. 24.  In light of this Order on Defendant's motion to dismiss, Plaintiff's motion for leave to file a SAC is DENIED as moot.  However, in light of Defendant's statement of non-opposition to Plaintiff's request to add a PAGA claim, Plaintiff may assert a PAGA cause of action in any amended complaint.

22