1 | Rebecca M. Aragon, State Bar No. 134496
raragon@littler.com
2 | LITTLER MENDELSON, P.C.
633 West Fifth Street
3 | 63rd Floor
Los Angeles, California 90071
4 | Telephone: (213) 443-4300
Facsimile: (213) 443-4299
5 |
Alison L. Tsao, State Bar No. 198250
6 | atsao@cdflaborlaw.com
Connor J. Moyle, State Bar No. 250384
7 | cmoyle@cdflaborlaw.com
CAROTHERS DISANTE & FREUDENBERGER LLP
8 | 601 Montgomery Street
Suite 350
9 | San Francisco, California 94111
Telephone:  (415) 981-3233
10 | Facsimile:  (415) 981-3246

11 | Attorneys for Defendant
SKY CHEFS, INC., a Delaware Business entity

12 |

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SAUNDRA JOHNSON and HANIFA HABIB, individually and on behalf of all others similarly situated, | Case No. 11-CV-05619-LHK |
| | Assigned for All Purposes To: |
| | Judge: Hon. Lucy H. Koh |
| Plaintiffs, | Ctrm:   8 |
| vs. | **NOTICE OF MOTION AND MOTION** |
| SKY CHEFS, INC., a Delaware Business entity, and DOES ONE through and including DOES ONE HUNDRED, | **FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Defendants. | |
| | Date:    July 11, 2013 |
| | Time:    1:30 p.m. |
| | Trial Date:  May 12, 2014 |

CAROTHERS DISANTE &
FREUDENBERGER LLP

677445.2

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................... 2

II.  FACTUAL BACKGROUND .................................................................................. 2

  A.   Defendant's Business Operations ................................................................ 2

  B.   San Jose LWO Litigation & Negotiations ................................................... 3

  C.   Plaintiffs' Employment With Defendant ..................................................... 3

  D.   Plaintiffs' Claims & Procedural History ...................................................... 4

III. ARGUMENT ........................................................................................................... 5

  A.   Plaintiffs' Claims For Unpaid Wages Are Preempted By The Railway
       Labor Act ..................................................................................................... 5

       1.   The RLA Preempts Claims Requiring Interpretation Of A CBA ........ 5

       2.   Sky Chefs Is A Covered Employer Under The RLA ........................... 6

       3.   The RLA Preempts Johnson's Claim For Vacation Pay ...................... 7

       4.   Johnson's Claim For Reporting Time Pay Is Preempted ..................... 7

       5.   Plaintiffs' Minimum Wage, Overtime, And Rest Break Claims
            Are Preempted .................................................................................... 8

       6.   The Continuing Wages & UCL Claims Fail Where Based On
            Preempted Claims ............................................................................... 9

  B.   Because Sky Chefs Is Covered By The RLA, California Law Explicitly
       Exempts Its Employees From The Wage Order Overtime And
       Reporting Time Pay Requirements .............................................................. 10

  C.   Plaintiffs' Claims Are Preempted By The Airline Deregulation Act ......... 10

       1.   The ADA Applies To Sky Chefs ......................................................... 11

       2.   The Rest Break Laws & The San Jose LWO Affect Rates,
            Routes & Services ............................................................................... 11

  D.   Plaintiffs Are Not Owed Any Unpaid Wages ............................................. 13

       1.   Johnson Timely Received Pay For All Work Performed ..................... 13

       2.   Johnson Is Not Owed Any Vacation Pay ............................................ 14

       3.   Johnson Is Not Owed Any Reporting Time Pay ................................. 14

  E.   Plaintiffs' "Off The Clock" Claims Fail ..................................................... 15

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

1

**TABLE OF CONTENTS (cont.)**

2

**Page**

3    F.    Plaintiffs' Rest Breaks Claim Fails ............................................................. 16

4    G.    Plaintiffs' Claims For Continuing Wages Fail Because Any Violation
            Was Not Willful ............................................................................................ 17
5
6    H.    Plaintiffs' Wage Statement Claim Fails ...................................................... 18

7    I.    The San Jose LWO Claims Are Invalid As A Matter Of Law ................... 20

8          1.    The San Jose LWO Does Not Cover Plaintiffs ............................... 20

9          2.    Plaintiffs' San Jose LWO Claim Is Barred By Settlement
                 Agreement ....................................................................................... 20
10
           3.    The *Machinists* Doctrine Preempts Application Of The San Jose
11               LWO Here ........................................................................................ 21

12                     a.    The San Jose LWO Constitutes A Regulatory Action,
                             Not A Proprietary One, And Is Not A Generally
13                           Applicable Minimum Labor Standard ................................. 22

14                     b.    The San Jose LWO Is Not A "Narrow Spending
                             Decision." ........................................................................... 24
15
           4.    The Current CBA Bars Plaintiffs' San Jose LWO Claim ............... 24
16
           5.    Any Alleged Failure To Pay Wages Under The San Jose LWO
17               Was Not Willful ............................................................................... 25

18   J.    The UCL And PAGA Claims Fail Because The Underlying Claims Are
           Invalid ........................................................................................................... 25
19
20   IV.   CONCLUSION ......................................................................................................... 25

21

22

23

24

25

26

27

28

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4   *520 Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119 (7th Cir. 2008)..........................22

5   *Adames v. Exec. Airlines*, 258 F.3d 7 (1st Cir. 2001) .........................................................9

6   *Aeroground, Inc. v. City & County of San Francisco*, 170 F. Supp. 2d 950 (N.D. Cal. 2001) ...........................................................................................................21, 22, 23, 24

7

8   *Am. Trucking Ass'ns v. City of Los Angeles*, 660 F.3d 384 (9th Cir. 2011)............22, 23, 24

9   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .........................................................5

10  *Andrews v. Metro North Commuter R.R.*, 882 F.2d 705 (2d Cir. 1989).............................15

11  *Angeles v. U.S. Airways*, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013)........................12, 13

12  *Blackwell v. SkyWest Airlines*, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008)......................6, 9, 12, 13

13  *Burgos v. Exec. Air, Inc.*, 914 F. Supp. 792 (D.P.R. 1996) ..................................................9

14  *Cardinal Towing v. City of Bedford*, 180 F.3d 686 (5th Cir. 1999)....................................21

15  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................5

16  *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995).................................22, 23

17  *Continental Airlines v. Am. Airlines*, 824 F. Supp. 689 (S.D. Tex. 1993) .........................11

18  *Cruz v. Sky Chefs, Inc.*, 2012 WL 6680174 (N.D. Cal. Dec. 21, 2012)..............................6

19  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)...............................................6

20  *Dilts v. Penske Logistics, LLC*, 819 F. Supp. 2d 1109 (S.D. Cal. 2011)..................11, 12, 13

21  *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327 (9th Cir. 1981)..............................15

22  *Espinal v. Northwest Airlines*, 90 F.3d 1452 (9th Cir. 1996) ...............................................5

23  *Firestone v. S. Cal. Gas Co.*, 281 F.3d 801 (9th Cir. 2002) .................................................9

24  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) .....................................................5

25  *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011 (9th Cir. 2010)..................24

26  *Lividas v. Bradshaw*, 865 F. Supp. 642 (N.D. Cal. 1994)...................................................14

27  *Machinists v. Wisc. Emp't Rels. Comm'n*, 427 U.S. 132 (1976)............................21, 22, 23

28  *Marlow v. AMR Servs. Corp.*, 870 F. Supp. 295 (D. Haw. 1994) .................................10, 11

    *Morales v. TWA*, 504 U.S. 374 (1992)................................................................................10

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S. 364 (2008) .......................................... 10, 11

*Saridakis v. United Airlines*, 166 F.3d 1452 (9th Cir. 1996).................................................. 6

*Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979) ................................ 5

*Tucker v. Hamilton Sundstrand Corp.*, 268 F. Supp. 2d 1360 (S.D. Fla. 2003) ................................ 11

*Univ. of Haw. v. Cayetano*, 183 F.3d 1096 (9th Cir. 1999) ................................................. 7

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002)................................. 5

*Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994 (9th Cir. 2007).................................. 6

*Westbrook v. Sky Chefs*, 35 F.3d 316 (7th Cir. 1994) ....................................................... 6

*White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) ................................... 16

**State Cases**

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) ...................................... 18

*Brinker v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ................................................. 16

*Choate v. Celite Corp.*, __ Cal. App. 4th __, 2013 WL 1833015 (2013) ................................... 14, 18

*Fitz-Gerald v. SkyWest*, 155 Cal. App. 4th 411 (2007)........................................... 9, 10

*Owens v. Macy's Inc.*, 175 Cal. App. 4th 462 (2009) ........................................... 14

*Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136 (2011) ..............................8, 13, 15

*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal.
App. 4th 765 (2002) ............................................................................... 18

*See's Candy Shops v. Super. Ct.*, 210 Cal. App. 4th 889 (2012)....................................... 16

*Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774 (1982)...........................................7, 14, 19

**Federal Statutes**

29 U.S.C. § 185.................................................................................................. 5

29 U.S.C. § 201.................................................................................................. 4

45 U.S.C. § 1451................................................................................................ 6

45 U.S.C. § 151.................................................................................................. 5

49 U.S.C. § 1305(a)(1)........................................................................................ 10

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

**TABLE OF AUTHORITIES (cont.)**

Page(s)

**State Statutes**

California Business & Professions Code § 17200 ............................................................ 4

California Labor Code § 1194 ......................................................................................... 4

California Labor Code § 203 .............................................................................. 4, 17, 20

California Labor Code § 226 ................................................................................... 4, 20

California Labor Code § 226(e)(C)(3) ........................................................................ 19

California Labor Code § 226.7 ....................................................................................... 4

California Labor Code § 227.3 .............................................................................. 8, 14

California Labor Code § 2699.3(b) .............................................................................. 25

California Labor Code § 2699.3(c) .............................................................................. 25

California Labor Code § 2968 ....................................................................................... 4

California Labor Code § 510 ......................................................................................... 4

San Jose Municipal Code, Title 25, Chapter 25.11 ............................................... passim

**Rules**

Federal Rules of Civil Procedure, Rule 56 .................................................................... 5

**Regulations**

California Code of Regulations, title 8 § 11090(1)(E) ................................................ 10

California Code of Regulations, title 8 § 11090(12)(A) ............................................. 16

California Code of Regulations, title 8 § 11090(12)(B) ............................................... 8

California Code of Regulations, title 8 § 11090(2)(N) ............................................... 10

California Code of Regulations, title 8 § 11090(3)(A)(1)(a) ........................................ 8

California Code of Regulations, title 8 § 13520 ......................................................... 18

California Code of Regulations, title 8 § 13520(a) ..................................................... 18

**Other**

Division of Labor Standards Enforcement  Policies & Interpretations Manual § 15.1.6 .......... 19

*Sky Chefs*, 27 N.M.B. 55 1999 WL 962814 (1999) ...................................................... 6

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

1

## **TABLE OF AUTHORITIES (cont.)**

2

**Page(s)**

3     *Sky Chefs, Inc.*, 15 N.M.B. 397, 1988 WL 404504 (1988) ................................................................. 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

1        PLEASE TAKE NOTICE THAT on July 11, 2013, at 1:30 p.m. in Courtroom 8 of the above-

2   captioned Court located at 280 S. 1st Street, San Jose, California 95113, or as soon thereafter as the

3   matter may be heard, Defendant Sky Chefs, Inc. will and hereby does move, pursuant to the Federal

4   Rules of Civil Procedure, Rule 56, for an order granting summary judgment on all of Plaintiffs' claims.[1]

5        Defendant seeks summary judgment on the following bases: (1) the claims for continuing

6   wages, unpaid wages (vacation and reporting time pay), state minimum wages/overtime, rest period

7   violations, federal minimum wages/overtime, and San Jose Living Wage Ordinance ("LWO")

8   violations are preempted under the Railway Labor Act because they require interpretation of an RLA

9   collective bargaining agreement; (2) the Airline Deregulation Act preempts the claims for rest period

10  and San Jose LWO violations; (3) the claims for unpaid wages (to the extent premised on reporting

11  time pay) and rest period violations are precluded by the applicable Industrial Welfare Commission

12  Wage Order; (4) the unpaid wages claims (vacation/reporting time pay), continuing wages, state and

13  federal minimum wages/overtime, deficient wage statements, and rest period violations, fail because

14  Plaintiffs cannot establish a triable issue on each element of those claims; (5) the continuing wages

15  claims fail because Plaintiffs cannot prove willfulness; (6) the wage statement claim fails because

16  Plaintiffs cannot establish injury; (7) the San Jose LWO claims fail because (a) Plaintiffs are not

17  covered by the ordinance, (b) the claims are barred by a settlement agreement; (c) the claims are barred

18  by the CBA between Defendant and Plaintiffs' union; (d) the ordinance is preempted under *Machinists*;

19  and (e) no treble damages are available because Plaintiffs cannot prove willfulness; and (8) Plaintiffs'

20  continuing wages claims and their Unfair Competition Law and Private Attorney General Act claims

21  fail because the underlying claims are preempted and/or fail on the merits.  This motion is based on this

22  notice of motion, the below memorandum of points and authorities, the Moyle, Donnelly, and Murray

23  declarations filed herewith, the Request for Judicial Notice ("RJN") filed herewith, the papers and

24  evidence on file in this case, and any evidence or argument the Court requires or permits.

25  _____

26  [1] Defendant conferred with Plaintiff's counsel on setting the hearing for June 27, 2013, but Plaintiff's
    counsel indicated he was not available that date or any date between June 27 and July 11 other than July
27  5 or 9.  Since this motion should be heard before the anticipated class certification motion (which must
    be heard by July 11, 2013), absent agreement from Plaintiff, Defendant will file an administrative
28  motion asking the Court to set a hearing on July 9, 2013 or another available non-hearing date.

                                                    Case No.  11-CV-05619-LHK
                                                    NOTICE OF MOTION; MOTION; AND
                                                    POINTS AND AUTHORITIES

677445.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Sky Chefs, Inc. ("Sky Chefs" or "Defendant") requests an order granting summary judgment on the claims alleged by Plaintiffs Saundra Johnson ("Johnson") and Hanifa Habib ("Habib") (collectively, "Plaintiffs"). Plaintiffs' wage claims and the derivative claims all fail as a matter of law. As shown below, Plaintiffs' claims for vacation pay, reporting time pay, minimum wages, overtime, and rest period violations all require interpretation of the applicable CBA and are therefore preempted by the Railway Labor Act. Plaintiffs' claims for rest period violations are preempted by the Airline Deregulation Act, as are their San Jose LWO claims. Even if preemption does not apply, the evidence demonstrates that Plaintiffs' wage claims fail on the merits, and their derivative claims are therefore also invalid. Plaintiffs' claims under the San Jose LWO are preempted under *Machinists*, and are barred because Plaintiffs have received all wages purportedly due and because Plaintiffs' union waived the applicability of the ordinance to its members. Based on the evidence and argument below, Defendant requests that the Court enter summary judgment in its favor.

## II. FACTUAL BACKGROUND

**A.      Defendant's Business Operations.**

Sky Chefs is a wholly-owned subsidiary of Deutsche-Lufthansa AG, a German entity that owns and operates Lufthansa Airlines. Murray Decl. ¶ 4. Sky Chefs' primary function is the provision of in-flight food and beverage catering services to hundreds of airline carriers in the United States. Sky Chefs maintains 40 kitchens near major airports in the United States. Murray Decl. ¶ 3. Carriers contracting with Sky Chefs exercise significant control in Sky Chefs' daily operations, including dictating food preparation and menus, communicating with Sky Chefs via computer systems, conducting unannounced kitchen and other inspections, implementing rules applicable to Sky Chefs employees' performance of services, training of certain employees, and recommendation of discipline, and termination of certain employees. Murray Decl. ¶¶ 12-14. Sky Chefs employees prepare meals, beverages, and related supplies as required by various airline clients and are responsible for delivering the meals and other supplies and loading them onto the aircraft consistent with applicable regulations and in a timely manner to avoid delaying flights, as well as unloading trash from the aircraft to be

1   disposed of at Sky Chefs' facilities consistent with FDA, Customs, and Border Patrol regulations. *Id.*

2         Defendant is party to a collective bargaining agreement ("CBA") with UNITE HERE that

3   consists of a Master National Agreement setting forth terms and conditions of employment applicable

4   to all Sky Chefs employees in the craft or class nationwide, as well as numerous Local Wage

5   Supplemental Agreements providing hourly wage scales that vary in accordance with local area

6   standards for employees performing comparable work. The CBA versions relevant to this action are

7   (1) the prior CBA executed June 12, 2008 ("2008 CBA") and (2) the current CBA executed April 2,

8   2012 ("2012 CBA"). Murray Decl. ¶ 7, Exhs. D & E. The CBA covers hourly wages, overtime, rest

9   periods, employee benefits, reporting time pay, vacation pay, and numerous other employment

10  provisions affecting the employment relationship between Sky Chefs and its union employees. The

11  Local Wage Supplemental Agreements contain rates of pay and hourly "differentials" that apply in

12  certain circumstances when Sky Chefs' San Jose employees perform "lead" services, or work on

13  specific shifts that require additional pay (known as "shift differentials"). Murray Decl. ¶ 7, Exhs. D &

14  E. Both Plaintiffs were union members subject to the CBA. Murray Decl. ¶ 6, Exhs. B & C.

15  **B.**     **San Jose LWO Litigation & Negotiations.**

16        In October 2008, the City of San Jose enacted the San Jose Airport Living Wage Ordinance

17  ("San Jose LWO"), San Jose Municipal Code, tit. 25, ch. 25.11. In August 2009, Defendant filed an

18  action (the "LWO litigation") for injunctive and declaratory relief seeking a determination that Sky

19  Chefs was not subject to the San Jose LWO. ECF 8-3, Exh. J; ECF 44 ("9/27/12 Order") at 2 n.1. In

20  August 2011, the parties settled the case. ECF 8-1, Exh. F. Johnson and Habib received checks for the

21  difference between their hourly rates and the San Jose LWO rate for the entirety of their employment.

22  ECF 13-2 ¶ 4, Exhs. 2 & 3 (Johnson); Murray Decl. ¶ 17, Exh. G; Moyle Decl. ¶ 2, Exh. A (Habib).

23        From 2009 to 2011, Defendant and UNITE HERE negotiated a CBA waiver of the San Jose

24  LWO. Murray Decl. ¶¶ 8-11. Consistent with the parties' 2003 agreement waiving application of the

25  Port of Oakland LWO, the parties agreed to include such a waiver in the CBA in approximately

26  December 2011, and the 2012 CBA includes the waiver provision. Murray Decl. ¶ 10.

27  **C.**     **Plaintiffs' Employment With Defendant.**

28        Johnson was employed as a cold food production worker at Defendant's San Jose location

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

1  beginning June 15, 2010.  Johnson was hired as a full-time worker but switched to part-time status in or

2  about October 2010.  *See* Johnson Dep. (Moyle Decl. Exhs. B & C) 164:12-165:14, 465:6-466:6, Exh.

3  12.  Johnson experienced frequent performance and conduct issues during her employment and was

4  suspended on multiple occasions, the last suspension beginning on February 3, 2012.  3d Am'd Compl.

5  ("TAC") ¶ 7.  Johnson received pay for the work she performed through February 3, 2011 via direct

6  deposit on her regular payday.  *See* ECF 8-2 ¶ 6, Exh. E; ECF 8-3, Exh. E; 9/27/12 Order at 2 n.1.

7  Johnson filed a grievance with her union on February 8, 2011.  Johnson Dep. 247:19-249:16, Exhs. 20,

8  21; TAC ¶ 7.  On March 9, 2011, Johnson was not scheduled to work and attended a meeting (with

9  union representatives) where she was told she was being terminated.  Johnson Dep. 241:17-22, 243:25-

10  244:10, 388:6-389:20, 392:1-6.[2]  Plaintiff received two hours' pay for attending the March 9, 2011

11  meeting.  Donnelly Dep. (Moyle Decl. Exh. D) 139:13-142:1, TAC ¶ 10, Exh. 2.

12      Habib was employed as a cold food production worker at Defendant's San Jose location

13  beginning June 2, 2010 and held that position throughout her employment.  Habib Dep. (Moyle Decl.

14  Exhs. E & F) 51:9-11, 74:24-25 ; TAC ¶ 11.  In September 2011, Habib began a leave of absence.

15  TAC ¶ 11.  Habib's employment was terminated on or about June 18, 2012.  TAC ¶ 11.

16  **D.**   **Plaintiffs' Claims & Procedural History.**

17      The TAC alleges purported claims for (1) continuing wages under Cal. Labor Code § 203[3]; (2)

18  unpaid wages based on alleged reporting time and vacation pay violations; (3) failure to provide

19  information on pay stubs under § 226; (4) failure to pay minimum wages and overtime under §§ 510 &

20  1194; (5) failure to provide rest periods under § 226.7; (6) failure to pay minimum wages and overtime

21  under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; (7) illegal business practices

22  under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof's Code § 17200 *et seq.*; (8) San Jose

23  LWO violations; and (9) penalties under the Cal. Labor Code Private Attorney General Act ("PAGA"),

24  §§ 2968 *et seq.*  Plaintiffs seek to represent (1) a "Final Wage Class" based on unpaid and continuing

25  wages claims; (2) a "226 Class" based on the wage statement claim; (3) an "Overtime and Rest Break

26  _____

27  [2] The meeting had been delayed because Johnson ignored numerous calls and letters from Defendant during her suspension.  Johnson Dep. 386:1-13, 437:3-17, Exh. 28; Donnelly Dep. 139:24-140:3.

28  [3] Section references herein are to the California Labor Code unless otherwise indicated.

1   Class" based on the minimum wage, overtime, and rest break claims; and (4) a "Living Wage Class"

2   based on the San Jose LWO claim.  Plaintiffs also seek to pursue an FLSA collective action.

3          Johnson filed this case on October 18, 2011 in the Santa Clara County Superior Court and

4   Defendant removed to this Court on November 21, 2011.  ECF 1; ECF 1-1, Exh. A ("Compl.").

5   Defendant moved to dismiss the First Amended Complaint (ECF 1-1, Exh. B) ("FAC") on November

6   28, 2011.  ECF 8 ("MTD").  On September 27, 2012, the Court granted in part the MTD, dismissing,

7   with leave to amend, the claims for (1) unpaid wages based on reporting time pay, (2) inaccurate wage

8   statements, (3) continuing wages (based on reporting time pay).  9/27/12 Order at 21-22.  Johnson filed

9   a Second Amended Complaint ("SAC") on October 18, 2012 adding the PAGA claim.  ECF 45.  On

10  January 29, 2013, the Court approved a stipulation for the filing of the TAC adding Habib as a plaintiff

11  and adding California and FLSA minimum wage/overtime claims and a rest period claim.  ECF 63, 64.

## III.  ARGUMENT

13         Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

14  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

15  moving party can do so by presenting evidence negating an essential element of the non-moving party's

16  case, or by showing that the non-moving party cannot provide evidence to support an element upon

17  which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).

18  The burden then shifts to the non-moving party to offer evidence demonstrating "specific facts" that

19  could permit a reasonable jury to return a verdict in his favor.  Fed. R. Civ. P. 56(e); *Anderson v.*

20  *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Conclusory, speculative testimony in affidavits and

21  moving papers cannot defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d

22  730, 738 (9th Cir. 1979); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

23  A.   **Plaintiffs' Claims For Unpaid Wages Are Preempted By The Railway Labor Act.**

24         1.   **The RLA Preempts Claims Requiring Interpretation Of A CBA.**

25         The Railway Labor Act, 45 U.S.C. §§ 151 *et. seq.* ("RLA"), preempts any dispute "involving

26  the interpretation or application of existing labor agreements [subject to the RLA]."  *Espinal v.*

27  *Northwest Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996).  The RLA utilizes "the preemption test used in

28  cases under the [LMRA], 29 U.S.C. § 185."  *Espinal*, 90 F.3d at 1456; *Hawaiian Airlines, Inc. v.*

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

1  *Norris*, 512 U.S. 246, 263 n.9 (1994).[4]  Preemption applies to claims that "require the court to interpret

2  a CBA provision that is reasonably relevant to the resolution of the dispute." *Ward v. Circus Circus*

3  *Casinos, Inc.*, 473 F.3d 994, 997-98 (9th Cir. 2007); *Saridakis v. United Airlines*, 166 F.3d 1452, 1458-

4  59 (9th Cir. 1996); *Blackwell v. SkyWest Airlines*, 2008 WL 5103195, at *9 (S.D. Cal. Dec. 3, 2008)

5  (dismissing overtime claims where assessing them "would require this Court to construe the CBA.").[5]

6      **2.**    **Sky Chefs Is A Covered Employer Under The RLA.**

7      The RLA governs relations between (1) employers who are rail carriers, air carriers, or who

8  engage in sufficiently related activities, and (2) their union employees and covers "any company which

9  is directly or indirectly owned or controlled by or under common control with any carrier . . . ." 45

10  U.S.C. § 1451.  As set above, Sky Chefs is owned by an air carrier and provides in-flight catering

11  services to air carriers who exercise significant control over Sky Chefs' operations. *See* Section II.A.;

12  Murray Decl. ¶¶ 3-5, 12-14. Thus, the RLA controls the relationship between Sky Chefs and its union

13  employees. *Cruz v. Sky Chefs, Inc.*, 2012 WL 6680174, *3 (N.D. Cal. Dec. 21, 2012) ("Because airline

14  carriers directly and indirectly exercise significant control over Defendant's business and operations . . .

15  the RLA applies to Defendant and its employees.")[6]; *Westbrook v. Sky Chefs*, 35 F.3d 316, 317 (7th Cir.

16  1994); *Sky Chefs, Inc.*, 15 N.M.B. 397, 405-06, 1988 WL 404504 (1988) (Sky Chefs is subject to a

17  "substantial . . . degree of control" by its airline customers; *Sky Chefs*, 27 N.M.B. 55, 64, 1999 WL

18  962814 (1999) ("Sky Chefs remains a carrier subject to the [RLA].") (Murray Decl., Exh. A).

19

20

---

21  [4] Because identical standards apply, the arguments demonstrating RLA preemption also establish

22  LMRA preemption.  Thus, the preempted claims must be dismissed because Plaintiffs do not allege exhaustion of contractual remedies. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983).

23  [5] Sky Chefs asserted RLA preemption in its MTD.  The Court denied the motion on that issue without prejudice to a motion for summary judgment following discovery. 9/27/12 Order at 8.

24  [6] In *Cruz*, Judge Ryu determined that a minimum wage claim was not preempted by the RLA where it was premised on a claim that "illegal rounding" of employees' time caused the defendant to fail to pay

25  the minimum wage. *Cruz*, 2012 WL 6680174, at *4. Due to the specific nature of these allegations and the fact that the plaintiff agreed to "limit all claims to encompass only class members who had never

26  received a shift differential or lead pay during the class period," Judge Ryu found that interpreting the collective bargaining agreement would not be required to resolve the overtime claim. *Id.* at *1, 4. By

27  contrast, Plaintiffs have not similarly limited their claims and the minimum wage claims apply to "all non-exempt employees of Defendant who worked at the [San Jose airport]." TAC ¶ 36.  Accordingly,

28  the reasoning in *Cruz* indicates that the claims here are preempted. *See also* Section III.A.5.

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

### 3. The RLA Preempts Johnson's Claim For Vacation Pay.

Johnson contends she was entitled to two days of vacation pay upon termination. TAC ¶ 65, TAC ¶¶ 10, 65-66.[7] Johnson must prove she was entitled to vacation pay in the first place, since there is no obligation to provide vacation pay. *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 784 (1982) (§ 227.3 does not apply if employer provides no vacation). However, under the CBA, only full-time employees with six months' tenure can accrue vacation pay. CBA, Exh. A, § 4; Murray Decl. ¶¶ 15-16; Donnelly Dep. 239:3-23, 241:13-24, Exh. 19, p. D00598; *see also* Habib Dep. 73:24-74:5. Johnson became a part-time employee in October 2010 (four months after being hired), *before* she obtained the necessary tenure to accrue *any* vacation. Johnson Dep. 164:12-165:14, 465:6-466:6, Exh. 12. To resolve the claim, the Court would therefore need to interpret the CBA, including the course of dealing with respect to vacation, in order to make the required preliminary finding that Plaintiff was entitled vacation pay under the CBA. Only after making that interpretation could the Court assess the merits of Johnson's claim to a right to payout of vacation upon termination. Thus, the RLA preempts this claim.

### 4. Johnson's Claim For Reporting Time Pay Is Preempted.

Johnson claims she is entitled to reporting time pay for appearing at Sky Chefs' facility for a meeting during which she was informed that she was being terminated. TAC ¶ 8; FAC ¶ 6.[8] Johnson admits she received pay for attending the meeting, but contends she should have received additional reporting time pay because she expected to work a shift that day. *See* 9/27/12 Order at 9; Opp'n to Mtn. to Dismiss (ECF 13) at 9; TAC ¶ 8. As set forth below, Johnson's allegation that she expected to work a regular shift on March 9, 2011 contradicts her prior pleadings, and she cannot provide evidence supporting her false allegation. *See* Section III.D.3. However, even if Plaintiff could provide such evidence, her claim is preempted because it requires interpretation of the CBA, including the parties' course of dealing with respect to reporting time pay. *Univ. of Haw. v. Cayetano*, 183 F.3d 1096, 1102 (9th Cir. 1999) ("In construing a collective bargaining agreement, not only the language of the agreement is considered, but also past interpretations and past practices are probative.").

---

[7] Habib does not pursue a vacation pay claim. TAC ¶¶ 64-66; Habib Dep. 257:1-17.

[8] Habib does not pursue a claim for reporting time pay. TAC ¶¶ 64-65; Habib Dep. 256:7-13.

1   Johnson's reporting claim requires her to prove that she reasonably expected to work a specified

2   number of hours greater than four upon being called to attend the March 9, 2011 meeting.  9/27/12

3   Order at 10-11; *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1146 (2011).  Determining whether

4   Plaintiff had a reasonable basis for her alleged expectation that she would work a normal shift when

5   appearing for a meeting with her union representatives after a suspension requires interpreting the CBA

6   provisions applicable to (1) reporting time pay and (2) disputes relating to discipline or discharge.  *See*

7   CBA § VII (discharge, discipline, and grievances) & Exh. A, § 7 (reporting time pay).  Because the

8   parties' practice in relation to these provisions – particularly whether employees called to attend

9   meetings under the CBA § VII dispute provisions following suspension nevertheless could reasonably

10  expect to work their regular shift that same day – is directly relevant to an element of Johnson's

11  reporting time claim, that claim requires interpretation of the CBA and is preempted by the RLA.

12         **5.        Plaintiffs' Minimum Wage, Overtime, And Rest Break Claims Are Preempted.**

13         The RLA preempts Plaintiffs' claims for minimum wages, overtime, and rest break premiums

14  because these claims require the Court to interpret the CBA.  Specifically, these claims require

15  determining the "regular rate" applicable to any work hours for which either Plaintiff, or any putative

16  class member, was purportedly not properly paid.  8 Cal. Code Regs §§ 11090(3)(A)(1)(a) (overtime

17  paid at 1.5 times regular rate); 11090(12)(B) (rest period premiums paid at regular rate).[9]  Determining

18  the applicable regular rate in turn requires interpreting the various CBA terms affecting that assessment.

19         For example, the CBA provides that an employee's pay rate and vacation pay, if any, depends

20  on a combination of "lead pay" and "shift differential."  CBA, Exh. A, § 1(h); CBA, Exh. A, § 4(e)

21  (vacation pay includes any lead and/or shift differential).  Under the CBA, "lead pay" provides a

22  premium wage rate to an employee acting as a "lead" on a particular shift.  The determination of who is

23  entitled to lead pay is discretionary and can vary from employee to employee and shift to shift.  Murray

24  Decl. ¶ 7.  "Shift differential" pay is a premium pay rate for employees working shifts falling between

25  particular hours.  The availability of shift differential pay and the rate applied varies from location to

26  location depending on the applicable local wage supplement to the CBA.  Murray Decl. ¶ 7.  Thus, to

27  _____

28  [9] The same is true of Johnson's vacation claim.  § 227.3 (vested vacation paid at final rate).

1    address any claim requiring a determination of the regular rate, the Court must determine whether any

2    of these provisions affects the pay rate for any particular hours worked by the employee in question,

3    including by interpreting the "lead pay" and "shift differential" provisions in the CBA and local

4    supplements.  The Court would also have to interpret the CBA provisions providing a different rate for

5    working to replace another employee in a higher-paid classification, including whether the employee

6    worked enough time in the higher classification.  2008 CBA, Exh. A, § 2(d); 2012 CBA, Exh. A, § 2(c).

7            Courts in California and other jurisdictions have confirmed that preemption applies where

8    resolving overtime, minimum wage, and rest break claims requires a determination of the applicable

9    regular rate based on CBA provisions applying different rates to work performed under different

10   circumstances.  *Fitz-Gerald v. SkyWest*, 155 Cal. App. 4th 411, 418-22 (2007); *Adames v. Exec.*

11   *Airlines*, 258 F.3d 7 (1st Cir. 2001) (cited with approval in *Firestone v. S. Cal. Gas Co.*, 281 F.3d 801,

12   802 (9th Cir. 2002)); *Burgos v. Exec. Air, Inc.*, 914 F. Supp. 792, 795-96 (D.P.R. 1996).  California law

13   claims for overtime, minimum wages, and rest breaks are necessarily preempted where the court "could

14   not determine the regular rate of compensation without interpreting the CBA." *Fitz-Gerald*, 155 Cal.

15   App. 4th at 421; *Blackwell*, 2008 WL 5103195, at *14 (CBAs include implied terms of practice, usage,

16   and custom that must be interpreted to determine applicable norms and standards for rest periods).

17   Here, as in *Fitz-Gerald*, assessing the minimum wage, overtime, and rest break claims requires

18   interpreting the CBA to determine whether shift differential, lead pay, and/or replacement pay apply to

19   a particular shift based on the work being performed.  Accordingly, the RLA preempts these claims.[10]

20          **6.     The Continuing Wages & UCL Claims Fail Where Based On Preempted Claims.**

21          Plaintiffs' claims for continuing wages and their derivative UCL claims fail because they are

22   based on preempted claims as set forth above. *Fitz-Gerald*, 115 Cal. App. 4th at 422 (waiting time and

23   UCL claims fail where underlying claims preempted).  To the extent Plaintiffs seek continuing wages

24   and/or UCL recovery premised on the San Jose LWO, their claim fails as set forth in Section III.I.1-5.

25

26   ───────────────

[10] Plaintiffs' claims hinging on the putative class members' regular rates also require interpreting 2012
27   CBA § II.5. to assess its effect on the application of the San Jose LWO.  *See* TAC ¶¶ 6, 11 (alleging
     that San Jose LWO provides actual regular rate for Plaintiffs).  As set forth below in Section III.I.4., the
28   2012 CBA waives application of the LWO to Defendant's employees retroactive to January 1, 2003.

1    **B.    Because Sky Chefs Is Covered By The RLA, California Law Explicitly Exempts Its**

2    **Employees From The Wage Order Overtime And Reporting Time Pay Requirements.**

3            Although Plaintiffs claim they are covered by Industrial Wage Commission Wage Order 5-

4    2001, the applicable order is Wage Order 9-2001, which applies broadly to the transportation industry

5    and covers airline industry employees.  Because Plaintiffs performed airline industry work, they fall

6    under Wage Order 9-2001.  Murray Decl. ¶ 4; *Fitz-Gerald*, 155 Cal. App. 4th at 416-19 (RLA

7    exemption from Wage Order 9-2001 applies even to non-union employees of covered employer); 8 Cal.

8    Code Regs § 11090(2)(N) ("'Transportation Industry' means any industry, business, or establishment

9    operated for the purpose of conveying persons or property from one place to another whether by rail,

10   highway, air, or water, *and all operations and services in connection therewith.*") (emphasis added).

11           Where workers in the airline industry are employed by a party to an RLA collective bargaining

12   agreement, they are specifically exempted from various portions of Wage Order 9-2001, including the

13   overtime and reporting time pay requirements.   Cal. Code Regs § 11090(1)(E); *Fitz-Gerald*, 155 Cal.

14   App. at 418-19 ("IWC Order No. 9–2001, subdivision 1(E) contains a RLA exemption and provides

15   that overtime wages do not have to be paid to 'employees who have entered into a collective bargaining

16   agreement under [the RLA].'" ).  Thus, the overtime and reporting time claims fail as a matter of law.

17   **C.    Plaintiffs' Claims Are Preempted By The Airline Deregulation Act.**

18           The Airline Deregulation Act ("ADA") preempts state laws "relating to rates, routes, or services

19   of any air carrier." 49 U.S.C. § 1305(a)(1); *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S.

20   364, 367 (2008).  Because the ADA is intended to "assure transportation rates, routes, and services . . .

21   reflect 'maximum reliance on competitive market forces,'" it preempts laws "having a connection with,

22   or reference to carrier rates, routes or services . . . even if a state law's effect on rates, routes or services

23   is only indirect." *Rowe*, 552 U.S. at 370-71.  Preempted laws need not "actually prescribe rates, routes,

24   or services, or be specifically addressed to the airline industry, or be inconsistent with federal law."

25   *Marlow v. AMR Servs. Corp.*, 870 F. Supp. 295, 298 (D. Haw. 1994).  Here, enforcing California rest

26   break laws and the San Jose LWO would prompt the "forbidden significant effect" on air carriers'

27   services, prices, and routes precluded by the ADA.  *Morales v. TWA*, 504 U.S. 374, 388 (1992).

28

677445.2

1.     **The ADA Applies To Sky Chefs.**

ADA preemption applies to non-air carriers providing goods and services to air carriers. *See Marlow*, 870 F. Supp. at 298 ("[I]t is preposterous to assume that Congress intended to block the prosecution against air carriers of certain suits but allow those same suits to proceed against all others"); *Tucker v. Hamilton Sundstrand Corp.*, 268 F. Supp. 2d 1360, 1364 (S.D. Fla. 2003) ("aircraft generator maintenance is sufficiently related to air carrier service" to preempt former employee's whistleblower claims). For example, in *Marlow*, the court held that the ADA applied to a jet bridge maintenance company because a "defendant need not be an air carrier so long as the state laws which prohibit defendant's alleged wrongdoing 'relate to' airline routes, rates or services." 870 F. Supp. at 298.

Although Sky Chefs is not an air carrier, it is wholly-owned by the owner/operator of Lufthansa Airlines and provides in-flight catering services to hundreds of airline carriers. Murray Decl. ¶¶ 3-4, 12-14. Sky Chefs employees perform work traditionally performed by airline employees, including preparing food and beverages for in-flight service, driving the food and beverages to the aircraft and loading them onto the aircraft prior to departure, and unloading trash from the aircraft for disposal at Sky Chefs' facilities. Murray Decl. ¶¶ 12-14. Sky Chefs' customers maintain a high degree of control over the work of Sky Chefs' employees to control costs and quality, and Sky Chefs' provision of services directly affects its customers' ability to provide on-time service. *Id.* Thus, the fact that Sky Chefs is not an air carrier does not affect the ADA analysis, and the only question is whether enforcing a given law would affect airline routes, rates, or services. *Tucker*, 268 F. Supp. 2d at 1364; *Marlow*, 870 F. Supp. at 298; *Continental Airlines v. Am. Airlines*, 824 F. Supp. 689, 697-98 (S.D. Tex. 1993).

2.     **The Rest Break Laws & The San Jose LWO Affect Rates, Routes & Services.**

California rest period laws are preempted where they interfere with the competitive market forces intended to determine the rates, routes, and services in the relevant industry. *Dilts v. Penske Logistics, LLC*, 819 F. Supp. 2d 1109, 1118-20 (S.D. Cal. 2011) (Federal Aviation Administration Authorization Act ("FAAAA")[11] preempts meal and rest break requirements that disrupt market forces

---

[11] The FAAAA and ADA preemption standards are identical, and courts use ADA and FAAAA preemption analyses interchangeably. *Rowe*, 552 U.S. at 370.

677445.2

1  by "bind[ing] [an employer] to a schedule and frequency of routes that ensures many off-duty breaks at

2  specific times throughout the workday."); *Blackwell*, 2008 WL 5103195, at *18 (applying rest period

3  laws to customer service representative's claims would have a "forbidden significant effect" on air

4  carriers' services, prices, and routes). In *Blackwell*, the court discerned an impermissible effect based

5  largely on the fact that mandating compliance with meal and rest period laws would (1) interrupt

6  employees performing duties related to the timeliness of flights and "could result in cascading flight

7  delays, increased risk of death or serious injury to passengers and damage to aircraft, and security

8  breaches," thereby impacting point-to-point service; and (2) increase the carrier's labor costs, meaning

9  the employer would "have to pass labor costs on to the consumer." 2008 WL 5103195, at *17-18.

10       More recently, in *Angeles v. U.S. Airways*, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013), Judge

11  Breyer held that the plaintiffs' responsibilities – cleaning, fueling, and ramp-related services – "directly

12  impact[ed] the transportation of passengers and cargo, and therefore enforcing state meal period and

13  rest break regulations would impermissibly regulate an air carrier's service." *Id.* at *9. Just like here,

14  "[i]t is easy to imagine a situation in which an FSA must, by law, be relieved of duty, but doing so

15  would prevent an aircraft from being fueled or serviced, or cargo from being unloaded such that it

16  would impact the schedule of the point-to-point transportation of passengers or cargo. This would

17  obviously impact Defendant's rates, routes, or services and warrant preemption . . . even if the state

18  law's impact is indirect." *Id.*; *see also Dilts*, 819 F. Supp. 2d at 1118-21 (because California meal and

19  rest period laws "require off-duty breaks for employees *at certain times and of certain lengths*," they

20  "establish requirements which substantively impact a motor carrier's routes and services.").

21       Here, imposing specific requirements on the extent and timing of breaks by Defendant's

22  employees likewise would impact the rates, routes, and services of Defendant's air carrier customers.

23  As noted, Defendant contracts with air carriers who require Sky Chefs to timely deliver food and

24  beverages to avoid delays. Section II.A., above; Murray Decl. ¶¶ 12-13. Sky Chefs employees are

25  tasked with loading the food and beverages onto the aircraft, requiring them to follow various security

26  protocols, and their failure to timely deliver Defendant's products and load and unload the planes could

27  cause broad flight delays. Murray Decl. ¶¶ 13. This is particularly true when Defendant's employees

28  must respond quickly to timely service planes on modified flight schedules. Forcing Sky Chefs to

1   adhere to California's rest-period laws will impermissibly "impact the schedule of the point-to-point

2   transportation of passengers or cargo" by requiring carriers to either pay more for Defendant's services

3   or risk flight delays and inability to fully service current routes. *Angeles*, 2013 WL 622032, at *9.

4        The impermissible effect of California rest break requirements is also demonstrated by the

5   detailed supervision Defendant's air carrier customers exercise its operations to control their costs and

6   ensure that their standards for timely servicing of flights are met.  Murray Decl. ¶¶ 12-14.  This high

7   degree of control demonstrates that changes in the services Defendant provides directly affect both the

8   air carriers' costs (and consequently the prices they charge) and their ability to provide timely service to

9   their routes.  Forcing Sky Chefs employees to take breaks at certain times will necessarily restrict the

10  supply of labor able to service aircraft within the narrow timeframe allotted, impacting flight timeliness.

11  This artificial decrease in labor supply will also increase the price of Defendant's services, creating

12  costs passed onto airline customers, creating the same indirect effect on prices that was preempted in

13  *Dilts*, *Blackwell*, and *Angeles*.  For the same reasons, requiring Defendant to pay artificially inflated

14  wage rates under the San Jose LWO would increase Defendant's labor costs and create costs that would

15  be passed on to air carriers and their customers.  Due to the direct connection between Defendant's

16  services and the prices and services provided by Defendant's airline customers, the ADA preempts the

17  application of California rest break requirements and the San Jose LWO to Defendant's employees.

18  **D.   Plaintiffs Are Not Owed Any Unpaid Wages.**

19       **1.   Johnson Timely Received Pay For All Work Performed.**

20       Johnson falsely alleges she did not receive pay for work performed through February 3, 2011

21  until March 9, 2011.  Johnson was paid in full for all wages through February 3, 2011 via her regularly

22  scheduled direct deposit on February 10, 2011.  ECF 8-2 ¶ 6, Exh. E; ECF 8-3, Exh. E; 9/27/12 Order

23  at 2 n.1.  Johnson provides no authority for her argument in the TAC that she was "terminated" when

24  she was suspended on February 3, 2011, and such allegations are insufficient to state a continuing

25  wages claim.  9/27/12 Order at 13 n.7 (citing *Price*, 192 Cal. App. 4th at 1144-45).  Although Johnson

26  claims she considered herself "fired" as of February 3, 2011, she *admits* she knew she was suspended,

27  not terminated.  Johnson Dep. 108:24-109:12, 386:1-387:7, 437:3-438:4, *see also* 407:3-8 (Johnson

28  believed she was terminated approximately March 14, 2011), Donnelly Dep. 197:16-200:8, Exh. 15.

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

1   Johnson also admitted the gap between her suspension and the March 9, 2011 meeting occurred

2   because she ignored calls from Defendant in the interim, demonstrating that her claim that she was

3   terminated before March 9, 2011 is unsupported.  Johnson Dep. 386:1-13, 437:3-17, Exh. 28; Donnelly

4   Dep. 139:24-140:3.[12]  Because Johnson performed no work after February 3, 2011 until the March 9,

5   2011 meeting when she was terminated, she has not identified any work for which she was not paid.

6       **2.**      **Johnson Is Not Owed Any Vacation Pay.**

7          Even if Johnson's vacation claim were not preempted by the RLA, it fails as a matter of law

8   because Johnson was not entitled to any vacation under the CBA and therefore had no vested vacation

9   to be paid at termination.  § 227.3 (applies to payment of *vested* vacation); *Suastez*, 31 Cal. 3d at 784

10  (§ 227.3 does not apply if employer does not provide vacation); *Owens v. Macy's Inc.*, 175 Cal. App.

11  4th 462, 469-72 (2009) (employers may adopt policies restricting employees entitled to accrue vacation

12  based on factors including length of employment and position).  Johnson became a part-time employee

13  before she worked the six months required to accrue any vacation time, and the CBA has never

14  provided for vacation benefits for part-time employees.  Johnson Dep. 164:12-21, 465:6-466:6, Exh.

15  12; Donnelly Dep. 239:3-23, 241:13-24; Murray Decl. ¶ 15-16; CBA, Exh. A, § 4(a).  Thus, Johnson

16  never accrued any vacation pay, and therefore had no vested vacation to be paid at termination.[13]

17      **3.**      **Johnson Is Not Owed Any Reporting Time Pay.**

18         Johnson seeks reporting time pay pursuant to Industrial Wage Order 5-2001.[14]  Johnson's

19  reporting time claim in the FAC was deficient because she "made no allegations that she was scheduled

20  to work or had an expectation of working on March 9, 2011."  9/27/12 Order at 10-11.  Although

21

22  _____

[12] Johnson's claim that she was terminated on February 3, 2011 is also meritless in light of her
23  allegation that she appeared for work on March 9, 2011 expecting to work a regular shift. TAC ¶ 8.
[13] California law allows a CBA to waive the employees' right to payout of vested vacation at
24  termination. *Choate v. Celite Corp.*, __ Cal. App. 4th __, 2013 WL 1833015 (2013); *Lividas v.
    Bradshaw*, 865 F. Supp. 642, 647 (N.D. Cal. 1994) (§ 227.3 "would allow a union to waive the right of
25  its members to the benefits of accrual without forfeiture under [*Suastez*].").  Here, the CBA waives the
    right to payout of vacation at termination for employees other than (1) employees with 10 years or more
26  seniority and (2) employees who are laid off. CBA, Exh. A, § 4, pp. 25-26; 9/27/12 Order at 12 ("[O]n
    the face of Plaintiff's own allegations, she is not entitled to vacation wages under the . . . CBA.").
27  However, the Court need not reach the waiver issue because Johnson never accrued any vacation pay.
[14] As shown below, Wage Order 9-2001 applies and it exempts Defendant from the reporting time pay
28  requirements.  Regardless of which order applies, Johnson's pay claim fails as set forth in this section.

_____

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

1   Johnson added a statement in the TAC parroting the required allegation (*see* TAC at 4:1-2), she

2   contradicts her prior allegations that she was suspended on February 7, 2011 and then on March 9, 2011

3   "returned to work for a meeting called by . . . Defendant." Compl. ¶¶ 5-6; FAC ¶¶ 5-6. Only after the

4   Court dismissed the reporting time pay claim did Johnson change her story and allege she was being

5   called in to perform a usual day's work. SAC ¶¶ 7-8; TAC ¶¶ 7-8. Because her new allegations

6   contradict her prior assertions, Plaintiff has failed to remedy the deficiencies in the FAC. 9/27/12 Order

7   at 9-11; *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1329-30 (9th Cir. 1981) (court may

8   disregard new allegations contradicting prior complaint); *Andrews v. Metro North Commuter R.R.*, 882

9   F.2d 705, 707 (2d Cir. 1989) (prior complaint is party-admission if contradicts subsequent complaint).

10          Furthermore, Johnson's deposition testimony shows the new allegation in the TAC is false.

11   Johnson knew that she was reporting to Defendant's facility for a meeting to discuss her suspension, not

12   to work a regular shift. Johnson Dep. 392:1-6. Although she claims she *hoped* the result of the meeting

13   would be that she would continue to work for Sky Chefs, and that she was willing to return to work

14   immediately, Johnson cannot present any evidence that she reasonably believed she was reporting for a

15   regular shift. Indeed, she admits that her union representatives told her the meeting related to her

16   suspension, drove her to the meeting, and attended it with her, negating any claim that she expected to

17   work a regular shift that day. Johnson Dep. 241:17-22, 243:25-244:10, 388:6-389:20. Johnson has no

18   evidence that she fits in the category of workers protected by the reporting time rules: "employees who

19   report to work expecting to work a specified number of hours, and who are deprived of that amount

20   because of inadequate scheduling or lack of proper notice . . . ." *Price*, 192 Cal. App. 4th at 1146.

21   **E.    Plaintiffs' "Off The Clock" Claims Fail.**

22          Plaintiffs also pursue minimum wage and overtime claims. The TAC does not suggest that

23   Plaintiffs' pay rate for recorded hours was below the state or federal minimum wage, or that overtime

24   was not paid at the correct rate for overtime hours recorded in the timekeeping system.[15] Instead, the

25   minimum wage and overtime claims are based on allegations that Plaintiffs performed work "off the

---

[15] Plaintiffs allege pay rates exceeding the $8.00/hour state minimum wage (TAC ¶¶ 6, 11; Habib Dep. 78:12-15) and Plaintiffs received overtime (Habib Dep. 147:15-148:6; Johnson Dep. Exh. 4).

1  clock" either before or after clocking in for their shift.  TAC ¶¶ 16, 69-72, 77-80.  However, Johnson

2  admits she *never* performed any work off the clock.  Johnson Dep. 320:2-21, 369:2-9.  Habib confirms

3  that Johnson did not work off the clock.  Habib Dep. 110:7-9, 116:20-117:21.  Accordingly, summary

4  judgment is appropriate on Johnson's state law and FLSA minimum wage and overtime claims.

5          Habib admits she received overtime when she worked past the end of her shift, but claims she

6  sometimes worked prior to her shift without clocking in to gather her tools and prepare.  However,

7  Habib admits she made the decision to start work early, that no supervisor ever told her to work before

8  her shift or observed her working before her shift, and that she has no evidence that any manager was

9  aware she was working prior to her shift.  Habib Dep. 188:3-14, 189:11-190:7; 245:19-246:10, 249:23-

10  250:23.  Because Habib has no evidence that Defendant knew or should have known of her alleged off

11  the clock work (which Defendant's policy prohibited), her claim fails.  *Brinker v. Super. Ct.*, 53 Cal. 4th

12  1004, 1051-52 (on "off the clock" claims, "liability is contingent on proof [defendant] knew or should

13  have known off-the-clock work was occurring.");  *See's Candy Shops v. Super. Ct.*, 210 Cal. App. 4th

14  889, 910 (2012);  Donnelly Dep. 218:13-219:6, Exh. 18, pp. D00565-D00571;  Donnelly Decl. ¶ 2-3.

15  F.    **Plaintiffs' Rest Breaks Claim Fails.**

16          Plaintiffs' claim for alleged failure to authorize rest breaks fails as a matter of law.  An

17  employer must "authorize and permit" employees to take rest breaks; there is no requirement to ensure

18  they are taken.  8 Cal. Code Regs § 11090(12)(A);  *Brinker*, 53 Cal. 4th at 1028, 1033 (employees may

19  "decline to take" breaks as long as breaks are authorized);  *White v. Starbucks Corp.*, 497 F. Supp. 2d

20  1080, 1085-86 (N.D. Cal. 2007).  Although "as a general rule" for an 8-hour shift, one ten-minute rest

21  break will usually occur on each side of the meal break, employers may alter that practice based on

22  practical considerations.  *Brinker*, 53 Cal 4th at 1031-32 (declining to impose specific requirements on

23  timing of rest breaks relative to meal breaks).  Accordingly, the California Supreme Court describes the

24  rest break obligation in terms of the total rest time an employer must authorize and permit.  *Id.* at 1028

25  ("Employees are entitled to 10 minutes rest for shifts from three and one-half to six hours in length, *20*

26  *minutes for shifts of more than six hours up to 10 hours . . . and so on.") (emphasis added).

27          Johnson admits she received the required amount of breaks, but claims she often took one 20-

28  minute rest break during the second half of the 8-hour shift, rather than two separate ten-minute breaks.

677445.2

1   Johnson Dep. 326:8-14, 327:20-328:17.  Johnson admits, however, that she was allowed to take rest

2   breaks at her discretion without seeking permission, including by taking a ten-minute rest break during

3   the first half of her shift and a second ten-minute rest break during the second if she chose to do so, and

4   no one ever prevented her from taking rest breaks.  Johnson Dep. 355:18-356:18, 357:18-358:3, 359:1-

5   5, 360:24-361:17, 362:14-21.  Johnson received her break time every day and took breaks whenever

6   she wanted to.  Johnson Dep. 365:5-9, 369:23-370:20; *see also* Habib Dep. 130:1-5.[16]  Indeed, when

7   Johnson did take a single 20-minute rest break, she did so based on a preference to take her break at the

8   same time as other employees.  Johnson Dep. 328:18-24.  Because she concedes that Sky Chefs

9   authorized and permitted her to take rest breaks consistent with the wage orders and that she was never

10  prevented from taking her breaks, summary judgment is required on Johnson's rest break claim.

11          Habib likewise admits she received the full twenty minutes of rest time during her regular eight-

12  hour shift from June 2010 through February 2011.  Habib Dep. 123:20-124:4, 124:23-125:3, 258:20-23.

13  Habib also admits that she knew that Sky Chefs' policy permitted two ten-minute breaks for an eight-

14  hour shift, and to her knowledge no one was ever prevented from taking a ten-minute break during the

15  first half of the shift.  Habib Dep. 225:13-23, 233:1-20, Exh. 11; Donnelly Dep. 232:14-233:19, Exh.

16  18, p. D00572.  Although she claims she took rest breaks less frequently after February 2011, Habib

17  admits she did so to do her own work and that other employees continued to take their breaks.  Habib

18  Dep. 134:16-135:4, 262:15-21, 265:4-17.  Thus, the basis for Habib's claim appears to be that she was

19  no longer *explicitly instructed* to take her break.  Habib Dep. 124:5-15.  However, an employer need

20  only authorize and permit rest breaks, not ensure they are taken.  Thus, there is no dispute that

21  Defendant properly authorized and permitted Habib to take rest breaks consistent with California law.

22  **G.      Plaintiffs' Claims For Continuing Wages Fail Because Any Violation Was Not Willful.**

23          To prevail on their claim for continuing wages, Plaintiffs must prove Sky Chefs *willfully* failed

24  to pay them all wages due.  § 203.  A failure to pay wages is not willful where an employer had a

25

26  _____

27  [16] Johnson admits she received *her* rest breaks but says she is pursuing this claim because some of her
    co-workers may not have gotten all their breaks, although she does not know "who or what or where."
    Johnson Dep. 365:5-20, 371:20-372:4.  This unsupported speculation cannot defeat summary judgment.

28

1 | reasonable, good-faith belief that the wages were not owed.  8 Cal. Code Regs § 13520(a); *Road*

2 | *Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765, 782

3 | (2002).  Where a party raises colorable arguments disputing the obligation to pay the wages, summary

4 | judgment is appropriate.  *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202-04 (2008).

5 | Although the Court previously determined that the willfulness issue was not appropriately

6 | resolved in ruling on Defendant's MTD prior to discovery, the parties have now had the opportunity to

7 | conduct discovery, and the evidence shows that on all of Plaintiffs' wage claims, Defendant has

8 | presented "a defense, based on law or fact which, if successful, would preclude any recovery on the part

9 | of the employee."  8 Cal. Code Regs § 13520.  On the reporting time claim, the fact that Plaintiff cannot

10 | show that she expected to work a normal shift – and in fact has admitted the contrary – clearly

11 | establishes a good-faith dispute.  *See* 9/27/12 Order at 9-11.  On the vacation claim, Sky Chefs'

12 | preemption defense and the lack of entitlement to vacation under the CBA both establish a good-faith

13 | dispute as a matter of law.  *See Choate*, __ Cal. App. 4th __, 2013 WL 1833015, at *4-5 (summary

14 | judgment for defendant required where employer relied in good faith on invalidated waiver of right to

15 | payment of vested vacation at termination).  On San Jose LWO claim, particularly in light of the LWO

16 | litigation leading to a settlement resolving the claims, a binding waiver of any applicability of the LWO

17 | by Plaintiffs' union, and because the ordinance should be held preempted because San Jose was not

18 | acting as a market participant when it adopted the LWO.  The minimum wage, overtime, and wage

19 | statement claims are also clearly subject to good-faith disputes as set forth herein.  Regardless of

20 | whether the Court ultimately agrees with these defenses, there is no evidence that they are not good-

21 | faith, colorable defenses.  *See* 8 Cal. Code Regs. § 13520.  Because Plaintiffs cannot point to any

22 | evidence of bad faith, the record precludes a finding of willfulness as a matter of law.  *See Amaral*, 163

23 | Cal. App. 4th at 1204 ("So long as no other evidence suggests the employer acted in bad faith,

24 | presentation of a good faith defense, based in law or fact, will negate a finding of willfulness.").

25 | **H.   Plaintiffs' Wage Statement Claim Fails.**

26 | Johnson seeks damages under § 226 because she received a single paycheck identifying her

27 | employer as "LSG Sky Chefs, Inc." rather than "Sky Chefs, Inc."  TAC ¶ 34.  Johnson admits she never

28 | received any other check with this purported "deficiency," and her other checks all identified her

18

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

1  employer as "Sky Chefs, Inc."  Johnson Dep. 81:15-83:20, 86:10-89:18, Exh. 4.  The fact that "LSG

2  Sky Chefs, Inc." appeared on only *one check* prepared in anticipation of a single meeting is alone

3  sufficient to resolve the issue in Defendant's favor.  § 226(e)(C)(3) ("a 'knowing and intentional

4  failure' does not include an isolated and unintentional payroll error due to a clerical or inadvertent

5  mistake.");  Donnelly Dep. 141:8-13, 144:2-18 (Johnson's final check said "LSG Sky Chefs" because it

6  was a manual check individually prepared and sent in anticipation of a meeting with Plaintiff).

7        Johnson cannot establish the necessary injury to sustain her wage statement claim[17] because no

8  facts suggest "she was personally injured by Defendant's addition of the acronym "LSG" before its

9  legal name." 9/27/12 Order at 16. [18]  While the TAC also speculates that other employees were unable

10  to identify the correct employer, the information contained in Exhibit 4 to the TAC does not establish

11  the facts relevant to the various referenced DLSE proceedings unrelated to this action.  In any case, the

12  documents attached to the TAC do not evidence any difficulty identifying the employer in those cases.

13  Johnson's own DLSE documentation indicates that her claim was dismissed because the DLSE does

14  not have jurisdiction to address vacation claims by employees covered by a collective bargaining

15  agreement, not due to any confusion about the proper employer.  Johnson Dep. 211:9-212:17, Exh. 14;

16  *see also* DLSE Policies & Interps Manual § 15.1.6, p. 15-2 ("*Suastez* . . . do[es] not apply where a

17  [CBA] is the basis for the earned vacation, and, consequently DLSE does not have jurisdiction to

18  determine whether vacation pay is due.").  Johnson also claims she expended "time, money, and effort"

19  to identify the appropriate entity to name, but admitted at deposition that her allegation was false.

20

21  [17] Habib alleges no facts supporting a wage statement claim.  The TAC states, without additional
    relevant allegations, that Habib is "not fully literate in English" and had "difficulty in understanding the
22  wage statement."  TAC ¶ 34.  However, Habib admits she understands English, can read English, spoke
    English with co-workers/managers, attended school taught in English, and testified in English at
23  deposition when she preferred to despite demanding a translator.  Habib Dep. 31:22-32:8, 33:23-34:14,
    35:20-23, 37:16-20, 38:7-21, 39:18-40:3, 47:12-21, 63:21-64:5, 175:17-176:1, 194:5-7, 254:16-255:6,
24  272:7-18, Exh. 4.  In any case, Habib alleges no harm from her purported difficulty understanding her
    wage statements, and testified that she kept no copies of her wage statements and printed copies on only
25  two or three occasions but never reviewed them.  Habib Dep. 154:18-23, 155:23-158:13, 159:25-162:9.
    She also admits she never received any check identifying her employer as "LSG Sky Chefs, Inc." and
26  she understood from her wage statements that her employer was "Sky Chefs, Inc."  Habib Dep. 267:12-
    20.  Habib therefore cannot establish any injury to support a claim for deficient wage statements.
27  [18] "LSG Sky Chefs" is a registered service mark for "airline catering and airport restaurant services."
    RJN Exhs. B, C, & D.
28

1  Johnson Dep. 227:12-15, 233:7-10, 469:8-11.  Johnson admits she was not confused and had

2  information properly identifying her employer.  Johnson Dep. 82:6-83:20, 85:3-14, 89:13-18, 124:9-12,

3  153:24-156:2, 455:22-456:23, Exhs. 3, 4, & 7.  Johnson "cannot manufacture her own injury by filing a

4  lawsuit where no underlying injury otherwise exists."  9/27/12 Order at 16.  There is no evidence of any

5  injury due to the alleged deficiencies in the information contained in Plaintiffs' pay stubs.[19]

6  **I.   The San Jose LWO Claims Are Invalid As A Matter Of Law.**

7        **1.   The San Jose LWO Does Not Cover Plaintiffs.**

8        The San Jose LWO covers employees who "[e]xpend[] at least half of [their] time working for

9  [an] airport business *on work at the airport*."  S.J.M.C., tit. 25, § 25.11.360(B) (emphasis added).  City

10  regulations confirm that an employee "is a 'Covered Employee' <u>only if</u> the employee spends at least

11  half of his or her time working for the Airport Business or Contractor *at an on-Airport job site*."  San

12  Jose LWO Regs., § 2(b), p. 2-3 (italics added) (RJN Exh. A).  The plain terms of the ordinance

13  therefore do not cover Plaintiffs, who performed no work at the airport terminal or air operations area

14  and spent 100% of their work time at the Sky Chefs kitchen facility.  Murray Decl. ¶ 3.  Thus, Plaintiffs

15  cannot make a *prima facie* showing that the San Jose LWO applies to them.

16        **2.   Plaintiffs' San Jose LWO Claim Is Barred By Settlement Agreement.**

17        Plaintiffs' San Jose LWO claims fail as a matter of law because they were resolved by a

18  settlement between the City of San Jose and Defendant, and Plaintiffs have each received a check from

19  Defendant representing the difference between their hourly rate and the San Jose LWO rate.  ECF 8-1

20  ¶ 3, Exh. F; ECF 13-2, ¶ 4, Exhs. 2 & 3 (Johnson); Murray Decl. ¶ 17, Exh. G; Moyle Decl. ¶ 2, Exh. A

21  (Habib).  Accordingly, neither Plaintiff is an "aggrieved employee" under the San Jose LWO.[20]

22

23  [19] Plaintiffs claim their wage statements were deficient because they stated the pay rate received, not the
24  rate Plaintiffs claim they *should have* received under the San Jose LWO.  This argument fails. 9/27/12
    Order at 16-17 n.9 (§ 226 requires employer to itemize "hourly rates *in effect during the pay period*.").
25  [20] The Court has noted that an employee who received all back wages might still be an "aggrieved
    employee" under the San Jose LWO if she could pursue treble damages, attorneys' fees, or costs under
26  the ordinance, or § 203 penalties. 9/27/12 Order at 20.  However, § 203 waiting time penalties and
    treble damages under the San Jose LWO require a finding of willfulness.  § 203; S.J.M.C., tit. 25,
27  § 25.11.1900(A).  Because Defendant had a good-faith belief that wages were not owed under the San
    Jose LWO (*see* Section III.G & III.I.5, above), the evidence cannot support a finding of willfulness, and
28  neither treble damages nor waiting time penalties are available.  With no substantive relief available,
                                                      (Continued...)

1   Moreover, the LWO settlement agreement releases Defendant from "all known and unknown claims

2   and causes of action (including but not limited to any claims for fines or penalties) that may exist as of

3   the date of this Agreement, arising out of Sky Chefs status as a leaseholder at SJC as it relates to wages

4   governed by the LWO and the Amended LWO." ECF 8-1 ¶ 3, Exh. F.

5        **3.**    **The *Machinists* Doctrine Preempts Application Of The San Jose LWO Here.**

6        *Machinists* preemption precludes state or municipal regulation of areas meant "to be controlled

7   by the free play of economic forces." *Machinists v. Wisc. Emp't Rels. Comm'n*, 427 U.S. 132, 140

8   (1976).  While the Court did not apply *Machinists* preemption to the San Jose LWO in ruling on

9   Defendant's MTD, Plaintiff made no showing to support the market participant exception other than

10   stating that the City owns the airport, and the fuller record now before the Court, including the

11   information on the settlement between the City and Sky Chefs (which the Court declined to consider on

12   the MTD) shows the City did not act as a market participant in enacting the San Jose LWO and instead

13   impermissibly sought to regulate the interactions between airport employers and employees.

14        A mere proclamation that the government acts as a proprietor is insufficient to establish the

15   market participant exception.  *Cardinal Towing v. City of Bedford*, 180 F.3d 686, 692 (5th Cir. 1999);

16   *Aeroground, Inc. v. City & County of San Francisco*, 170 F. Supp. 2d 950, 958 (N.D. Cal. 2001).

17   Instead, a court must answer two questions:

18       First, does the challenged action essentially reflect the entity's own interest in its
        efficient procurement of needed goods and services, as measured by comparison

19       with the typical behavior of private parties in similar circumstances? Second,
        does the narrow scope of the challenged action defeat an inference that its

20       primary goal was to encourage a general policy rather than address a specific
        proprietary problem?

21

22   *Aeroground,* 170 F. Supp. 2d. at 957 (citing *Cardinal Towing*, 180 F.3d at 693).

23       The first question looks to the nature of the expenditure and protects
        comprehensive state policies with wide application from preemption, so long as

24       the type of state action is essentially proprietary.  The second question looks to
        the scope of the expenditure and protects narrow spending decisions that do not

25       necessarily reflect a state's interest in the efficient procurement of goods or

26   _____

27   (...Continued)

    attorneys' fees and costs are also foreclosed.  Thus, neither Plaintiff can present any triable issue

28   supporting any entitlement to relief under the San Jose LWO.

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2

services, but that also lack the effect of broader social regulation.  If the answer to either question is yes, the market participant exception applies.

*Am. Trucking Ass'ns v. City of Los Angeles*, 660 F.3d 384, 398 (9th Cir. 2011).  Because the San Jose LWO is a targeted local ordinance that interferes with particular collective bargaining relationships rather than establishing a generally applicable minimum labor standard, it is preempted under *Machinists*.  *See, e.g.*, *Chamber of Commerce v. Bragdon*, 64 F.3d 497, 500 (9th Cir. 1995); *520 Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1136-39 (7th Cir. 2008).

### a.   The San Jose LWO Constitutes A Regulatory Action, Not A Proprietary One, And Is Not A Generally Applicable Minimum Labor Standard.

On the first question, the San Jose LWO is not a proprietary action in the form of a "comprehensive policy . . . with wide application" reflecting San Jose's interest in efficient procurement of needed goods and services.  In *American Trucking Associations*, Los Angeles, as owner of the city port, required companies sending drivers to the port to use employees, not contractors.  660 F.3d at 394.  The port's goal was to ensure a sufficient supply of drivers "by improvement of wages, benefits, and working conditions."  *Id.* at 407-08.  The court found the city did not act in a proprietary manner in seeking to "ensure that motor carriers would provide higher wages to drivers" at the port because the city could not pursue its interest in the stability of services to the port "by unilaterally inserting itself into the contractual relationship between motor carriers and drivers . . . ." *Id.*[21]

Likewise here, San Jose's invocation of its interest in "decreas[ing] worker turnover and instability in the workplace" and ensuring continuity of services and operations (S.J.M.C., tit. 25, § 25.11.100)[22] does not permit it to insert itself into the contractual relationship between Defendant and the employees and their union.  *Am. Trucking Ass'ns*, 660 F.3d at 407-08; *Aeroground*, 180 F.3d at 958-59 (recitation that "the sole purpose of this Rule is to protect the Airport Commission and its proprietary interest in the efficient operation of the Airport and the resulting revenues from those operations" was insufficient to establish market participant exception where ordinance applied "to all

---

[21] The interest in streamlined administration was also "insufficient to outweigh the Port's avowed desire to impact wages not subsidized by the State" which was "tantamount to regulation."  660 F.3d at 408.

[22] The additional stated goals to "protect the public health, safety and welfare" and to "allow workers to leave or avoid poverty" unequivocally demonstrate a regulatory purpose.  S.J.M.C., tit. 25, § 25.11.100.

677445.2

1   non-exempt employers at the airport" and "controll[ed] the conduct of these employers in their dealings

2   with third parties."). "Such an effort is a classic example of regulation, suggesting that [the

3   government] intended the rule to encourage a general policy regarding employer-employee labor

4   relations at the airport." *Aeroground*, 170 F. Supp. 2d at 958. That regulatory goal takes the San Jose

5   LWO outside of the market participant exception. *Am. Trucking Ass'ns*, 660 F.3d at 408 ("While the

6   Port may impose conditions on licensed motor carriers seeking to operate on Port property, it cannot

7   extend those conditions to the contractual relationships between motor carriers and third parties.").

8          The nature of the San Jose LWO – a *floor* on the wages payable to covered employees – makes

9   clear that San Jose LWO did not act in a proprietary capacity, since there is no evidence that a rational

10  market participant in the City's position would seek to substantially *increase* the labor costs of running

11  its facility. Because the San Jose LWO targets a particular location and displaces the results of

12  collective bargaining for employees working there, it constitutes prohibited "interference with the free-

13  play of economic forces" prohibited by *Machinists*. *Bragdon*, 64 F.3d at 504. Although state-wide or

14  industry-wide statutes, and statutes applying generally across a particular job classification, have been

15  upheld after *Bragdon*, the San Jose LWO has no such general application and is much narrower than

16  the ordinance invalidated in *Bragdon*, which applied countywide to "certain types of private industrial

17  construction projects costing over $500,000." *Id.* at 498. By contrast, the San Jose LWO is not even a

18  city-wide ordinance and applies only to workers at the airport. Thus, the San Jose LWO is not

19  minimum labor standard of general application setting the "backdrop" for labor negotiations, but rather

20  a targeted interference with the terms of collective bargaining agreements between particular employers

21  and unions at a single location. As such, it is exactly the kind of interference that *Machinists* prohibits.

22  *Id.* at 504 (targeted inference preempted where it "could redirect efforts of employees not to bargain

23  with employers, but instead, to seek to set minimum wage and benefit packages with political bodies.").

24          The evidence shows that a direct effect on the substantive terms of the CBA (1) was anticipated

25  when the San Jose LWO was adopted and (2) actually occurred. As interpreted by Plaintiff, the San

26  Jose LWO, upon enactment on January 1, 2009, immediately displaced the terms of the 2008 CBA and

27  required parties to either accept the newly regulated wage rates or bargain further regarding the

28  applicability of the San Jose LWO. Thus, the San Jose LWO did not create the "backdrop" for

23

677445.2

1   negotiations – it altered the outcome of those negotiations and required further negotiations to occur

2   based on wage rates and conditions that would never have resulted from prior negotiations, but rather

3   arose from the city's regulatory choice on wages for airport employees.  The inclusion of a specific

4   waiver option for CBAs proves the ordinance's effect on collective bargaining at the airport was

5   anticipated, and its targeted practical effects are shown by the LWO litigation and settlement on the

6   applicability of the ordinance, as well as the negotiations between Defendant and UNITE HERE over

7   CBA terms waiving the San Jose LWO.  *See* Section III.B., above.  Because the City effectively

8   substituted itself as a bargaining representative and thereby altered the economic forces affecting future

9   negotiations, the San Jose LWO impermissibly interferes with the terms of the CBA and is preempted.

10          **b.      The San Jose LWO Is Not A "Narrow Spending Decision."**

11          On the second *Aeroground* question, the San Jose LWO is not a "narrow spending decision"

12   lacking the nature of broader social regulation.  Narrow spending decisions under the market participant

13   exception are "expressly limited in time and scope – for example, they apply to one city contract or to a

14   number of contracts of a particular size and funded by a particular finite source."  *Am. Trucking Ass'ns*,

15   660 F.3d at 398-99; *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1028-29 (9th Cir.

16   2010) (application limited to projects costing over $200,000 in a three-year period funded by specific

17   initiative).  Like the provision in *American Trucking Associations*, the San Jose LWO is not limited to a

18   "narrow spending decision."  It covers all airport businesses whether contracting directly with the City

19   or not, without regard to contract size or funding source.  S.J.M.C., tit. 25, §§ 25.11.310, 25.11.500.

20   Thus, the "narrow spending decision" prong of the market participant exception is also inapplicable.

21          **4.      The Current CBA Bars Plaintiffs' San Jose LWO Claim.**

22          The San Jose LWO claims also fail because Defendant and Plaintiffs' union executed a CBA

23   clearly and unmistakably waiving the applicability of the San Jose LWO retroactive to January 1, 2003.

24   ECF 33; 2012 CBA §§ II.A.5, II.C.3.  The San Jose LWO explicitly permits such a waiver.  S.J.M.C.,

25   tit. 25, § 25.11.510.  Habib alleges her employment with Defendant ended June 18, 2012.  TAC ¶ 11.

26   Accordingly, the waiver in the 2012 CBA executed April 2, 2012 applies to Habib and eliminates her

27   San Jose LWO claim.  Furthermore, Defendant and the union negotiated the San Jose LWO waiver

28   from 2009 to 2011 and agreed to include it in the 2012 CBA by approximately December 2011.

24

677445.2

1    Murray Decl. ¶ 8-11, Exhs. E & F.  Thus, the union was still obligated to represent Plaintiffs in the

2    negotiations with respect to wages they were purportedly entitled to receive, and indeed processed a

3    grievance on Johnson's behalf after her suspension that resulted in NLRB proceedings until at least July

4    2011.  *See* Johnson Dep. 247:19-249:16, Exhs. 20, 21; July 15, 2011 Ltr. from NLRB (Moyle Decl. ¶ 8,

5    Exh. G).  Thus, the union was obligated to represent both Plaintiffs while it negotiated the current

6    CBA's San Jose LWO exemption, and there is no basis for ignoring the retroactive effect of the waiver.

7        **5.**     <u>Any Alleged Failure To Pay Wages Under The San Jose LWO Was Not Willful.</u>

8        As explained in the above sections, Defendant did not willfully violate the San Jose LWO

9    because Defendant reasonably believed that the preempted ordinance did not apply to its employees

10    and indeed was involved in an entire separate litigation seeking declaratory relief to that effect until the

11    action settled.  Accordingly, Plaintiffs cannot raise any triable dispute on the willfulness issue, and

12    treble damages under the San Jose LWO are not available.  S.J.M.C., tit. 25, § 25.11.1900(A).

13    **J.**     <u>The UCL And PAGA Claims Fail Because The Underlying Claims Are Invalid.</u>

14        Plaintiffs' derivative UCL claim fails for the reasons discussed herein.  TAC ¶ 83.  Johnson's

15    PAGA claim also depends on her wage claims and fails because they are invalid.  TAC ¶ 105.  To the

16    extent the PAGA claim is based on claims not stated in the initial Complaint, Johnson has not

17    completed the mandatory administrative steps to pursue a civil action on such claims.  §§ 2699.3(b),

18    (c); TAC ¶ 103 (Johnson gave LWDA notice of alleged violations in original Complaint).

19                 **IV.**  <u>**CONCLUSION**</u>

20        Based on the foregoing, Defendant respectfully requests that the Court enter summary judgment

21    in Defendant's favor with respect to the claims discussed herein.

22    Dated:  May 21, 2013         CAROTHERS DiSANTE & FREUDENBERGER LLP

23

24             By: _____/S/   Alison L. Tsao_____
                       Alison L. Tsao

25             Attorneys for Defendant
            SKY CHEFS, INC.

26

27

28

Case No.  11-CV-05619-LHK
NOTICE OF MOTION; MOTION; AND
POINTS AND AUTHORITIES

677445.2